# Bryan Carey *v.* Allemania Fire Insurance Company of Pittsburgh, Appellant.

*Insurance—Fire insurance—Waiver—Proofs of loss.*

In an action on a fire insurance policy, the case should be submitted to the jury on the question of the company's waiver of requirement of the proofs of loss, where the evidence tends to show that shortly after the fire the adjuster of the insurance company visited the plaintiff, and at his request plaintiff furnished a written statement under oath in relation to the fire, the size of the house, the nature of the business carried on in it, and the title to the lot on which it was erected; and that two days thereafter the adjuster procured from plaintiff a list prepared by plaintiff's wife of the articles destroyed, together with an estimate of the value of each of them, and that after the statement and list were delivered to the adjuster, he said in substance that there was nothing more for the insured to do.

The mere fact that a fire insurance company receives proofs of loss ninety-six days after a fire, where the policy calls for sixty days, and makes no objection for more than a month afterwards, is not in itself sufficient to show that the sixty days limit was waived by the company.

Argued April 18, 1895.    Appeal, No. 308, Jan. T., 1895, by defendant, from judgment of C. P., Luzerne Co., Dec. T., 1893, No. 163, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.    Reversed.

Assumpsit on a policy of fire insurance.    Before LYNCH, J.

At the trial it appeared that plaintiff's house was destroyed by fire on May 20, 1893.    The policy required proof of loss to be made within sixty days.    Actual proofs were not made until ninety-six days after the fire.    There was evidence which tended to show that the company had waived the provision as to proof of loss.    This evidence is sufficiently stated in the charge to the jury and in the opinion of the Supreme Court.

The court charged in part as follows:

A contract of insurance is an agreement, for a consideration, to indemnify against loss, and the evidence of the contract is to be found in the policy of insurance.    The insured house and all the loose or personal property contained therein was destroyed by fire on the night of the 20th of May, 1893. Shortly thereafter, according to the evidence of Mr. Carey and his wife, he notified Mr. Boone, from whom he said he received the policy and paid the money for the insurance, of the total loss, and a short time after that he met Mr. Paine, who, it is agreed, was the agent of the defendant company.    I shall not attempt to go over what transpired between Mr. Carey and his wife on the one side and Mr. Paine upon the other. You will remember the evidence as to what, if anything, Mr. Paine stated was his purpose in coming to Kingston for the purpose of examining or adjusting this loss.    What was said and done at the first meeting?    There were three meetings. [At the second it appears that at the request of Mr. Paine a schedule or list of articles destroyed by the fire, and their prices, or their value, at least, was made out and given to Mr. Paine, and he took it with him.    That was the last meeting before the sixty days expired.    At that meeting, according to the testimony of Mrs. Carey, she said: " I gave him the list.

I asked him if we had anything more to do there, and he said no, we could go home. He took the list." That list of itself is not evidence as to the value of the property, or, in other words, the plaintiff could not make evidence for himself in that way as to the value of the property; it was only admitted in evidence by the court for the purpose of submitting the question to the jury whether it was evidence of a waiver—whether that conduct upon the part of the agent of the company was a waiver of the right which the company had to stand upon the terms of its policy.] [1]

[What was said and done by Mr. Paine and by Mr. and Mrs. Carey at the two meetings before the sixty days had expired, and what was said and done by Mr. Paine and Mrs. Carey at the house when Mr. Paine visited the premises where they were living after the fire?] [2]

In a contract of this character, like every other contract, both parties had the right to stand strictly and firmly upon the terms of the policy. The company had the right to require of Mr. Carey that he furnish proofs of loss within sixty days. That provision was put in the policy for the benefit of the company in order that they might examine into the circumstances and facts of the fire, and that they might protect themselves from fraud by the insured. [As stated by both gentlemen in this case, the question for you to ascertain from the preponderance of the credible evidence in this case is, Did the company, who had the right to stand upon the terms of its policy, waive that stipulation?] [3] [If you believe the evidence in this case, you may find as a fact that the company did waive their right to stand upon this stipulation in the policy.] [4]

Both parties to the contract should, according to law and fair dealing, be entirely frank and fair with each other. The insured has no right to deceive or perpetrate a fraud upon the company, nor the company to deceive the insured, or to lull him into false security by which he loses his right to recover.

A waiver must be proved by clear and plain evidence. It is a question of intention upon the part of the company. But that intention may be gathered from the circumstances and acts of the authorized agents of the company or its officers. What, in this case, if anything, did the company or its officers do to lead Mr. Carey to believe that the statement, being a total

list furnished by him, was not sufficient, or did the company
or its agent, Mr Paine, act in such a manner as would lead a
man of the character and the apparent intelligence of Mr. Carey
to believe that the statement furnished by him was sufficient and
that the company required no additional proofs of loss? ] [5]

[As argued by the counsel for the defense it is conceded
that if the company's agent had said they would pay the loss,
that would have been enough; if they had denied liability,
that would have been sufficient to put the man upon his guard,
but that Mr. Paine stood mute.    That will not do—

Defendant's counsel : " I meant to be understood that if he
denied liability it waived the furnishing of proofs of loss, and
if he admitted liability it waived them."

The Court : Even stating it as the counsel does, the jury is
entitled to judge of a man's conduct as well as what he says.
Whether the jury believes from Mr. Paine's conduct in this
matter the insured was led to believe the company had waived
its right to stand upon its stipulation.] [6]

It is conceded that no formal proofs of loss were furnished
the company by Mr. Carey within the sixty-day limit named in
the policy.    So that the first question for you to pass upon is,
did the company, by the conduct of its officers or agents author-
ized to act, waive their right to demand proof of loss?

[Shortly after the sixty days had expired, according to the
evidence of both Mr. Carey and Mr. Paine, the liability of the
company was denied.    It was said, in substance, that Mr. Carey
was not the owner of the premises ; that he was a trespasser
on the lot.    That was the reason given at that time for not pay-
ing the loss.

In August, 1893, Messrs. McLean and Gibbons, attorneys
for the plaintiff, sent a formal proof of loss to the company and,
as appears, indorsed upon the back of the paper, which is pro-
duced here by the company ; it was received on the 24th of
August, one day after Mr. Gibbons stated he sent it.    No reply
was made until shortly before suit was brought against the com-
pany.    Then, according to the evidence of Mr. Gibbons, Mr.
Paine stated that the company did not recognize this proof of
loss because it had been made too late, that is, after the sixty
days set in the policy had expired.

According to this evidence the company directly after the

sixty days had expired denied its liability to pay Carey for the
reason that Carey had no title to the property, and that was
the only reason then given.   The formal proofs of loss having
been made out and sent to and received by the company after
the sixty days, if the company intended to rely upon another
defense, to wit : that the proofs of loss had not been furnished
in time, it was their duty to say so.   It would be nothing more
than fair dealing between man and man, and they are bound to
stand by it.   It was their duty, if they intend to rely upon
that defense, to so notify McLean and Gibbons.   If you deter-
mine that they did receive that proof of loss and made no reply
or made no objection to the proof until in October, you may
conclude that they waived the right to require the proof of loss
should be furnished in sixty days, and accepted the formal proof
furnished even at that late date.   The company cannot play
fast and loose more than any other person.

I do not say, and I do not wish you to understand me to say
that the company waived its right to have the proof of loss filed
within sixty days ; that is a question for you to pass upon—
whether upon the evidence submitted to you in this case the
company did so waive its right to insist upon this stipulation.
If you find that the company did so waive its right then you
may decide the case in favor of the plaintiff in so far as that
branch of it is concerned.] [7]

Verdict and judgment for plaintiff for $886.55.   Defendant
appealed.

*Errors assigned*, among others, were (1–7) above instruc-
tions, quoting them.

*W. W. Watson*, for appellant.—The furnishing of the proofs
of loss was a condition precedent to the bringing of the suit :
Gould v. Ins. Co., 134 Pa. 570 ; Welsh v. London Assurance
Corporation, 151 Pa. 607.

To constitute a waiver, there should be shown some official
act or declaration by the company during the running of the
time dispensing with it; something from which the assured
might reasonably infer that the underwriters did not mean to
insist upon it : Ins. Co. v. Dunham, 117 Pa. 460 ; Ins. Co. v.
Brown, 128 Pa. 386.

It is only where the insured in good faith and within the stipulated time does what he plainly intends as a compliance with the requirements of his policy, that the rule requires the company to notify the insured of its objection: Inland Ins. Co. v. Stauffer, 33 Pa. 397; Trask v. Ins. Co., 29 Pa. 198; Beatty v. Ins. Co., 66 Pa. 9.

*William R. Gibbons, William S. McLean* with him, for appellee.—If the company proceeds to adjust the loss, or otherwise so acts as to induce the plaintiff, as a reasonable man, to think no proof will be required, and so he allows the time limited for filing the proof to pass, the company cannot insist on the time limit: 2 May on Ins. sec. 465; Thierolf v. Ins. Co., 110 Pa. 37; Bonnert v. Ins. Co., 129 Pa. 558; McCormack v. Ins. Co., 163 Pa. 184; O'Neill v. Ins. Co., Ad. Rep., March 15, 1895.

OPINION BY MR. JUSTICE McCOLLUM, October 7, 1895 :

The insurance company rests its defense to this action on two grounds: The first ground is that the proofs of loss were not furnished within the time allowed by the policy, and the second ground is that when the policy was issued the plaintiff was not the sole and unconditional owner of the building insured. The policy required that the proofs of loss be furnished to the insurer within sixty days after the fire, while the fact is that they were not furnished until ninety-six days after that time. Compliance with this requirement of the policy was a condition precedent to suit upon it, and the failure to furnish the proofs within the stipulated time is, standing by itself and unexplained, a sufficient answer to the plaintiff's demand. But it is alleged that the company waived the stipulation in regard to the proofs in what was said and done by its agent and adjuster in the interviews he had with Mr. and Mrs. Carey soon after the fire. It appeared that on the 12th of June, 1893, he obtained from the plaintiff a written statement under oath in relation to the fire, the size of the house, the nature of the business carried on in it, and the title to the lot on which it was erected; and that two days thereafter he procured from him a list, prepared by his wife, of the articles destroyed, together with an estimate of the value of each of them. The statement and list were furnished to the adjuster on his request, and after

they were delivered to him he said in substance that there was nothing more for the insured to do. Neither the plaintiff nor his wife saw or heard from him again before the time allowed by the policy for furnishing the proofs expired.

The learned court below instructed the jury that they might find from the evidence of what was said and done by the agent in the interviews referred to that the company waived or was estopped from asserting its right to stand upon the stipulation in the policy in regard to proofs of loss. The company denies the alleged waiver and estoppel, and insists that there is no evidence in the case which warrants an inference of either, but our examination of the evidence has failed to convince us that the court erred in submitting these questions to the jury.

The second ground of defense to the action is not tenable, and the contention based upon it is sufficiently answered in the charge of the learned judge and by the decision of this court in Imperial Fire Insurance Company v. Dunham, 117 Pa. 460.

Before this suit was brought the plaintiff was notified that the company denied its liability on the grounds above stated and considered. The jury, however, were instructed that if the company received formal proof of the loss on the 24th of August—ninety-six days after the fire—and did not object until October that it was furnished too late, they might conclude that the sixty days limit was waived. The instruction was broad enough to allow the jury to find a waiver from the single circumstance mentioned in it, and in this case they may have based their verdict upon it. If the plaintiff lost his right to maintain an action on the policy by his neglect to furnish the proof of loss within the time stipulated in it something more was required to reinvest him with that right than the delay referred to. It is sufficient on this point to cite Beatty v. Lycoming County Insurance Co., 66 Pa. 9.

We discover nothing else in the case which calls for a reversal or requires discussion. We therefore sustain the seventh specification and overrule the others.

Judgment reversed and venire facias de novo awarded.