## PHOENIX INS. CO. OF BROOKLYN, N. Y., v. QUINETTE.

### MERCANTILE FIRE & MARINE INS. CO. OF BOSTON v. SAME.

### QUEEN INS. CO. OF AMERICA v. SAME.

Nos. 2041, 2042, 2043.    Opinion Filed July 18, 1912.

Rehearing Denied December 17, 1912.

(128 Pac. 722.)

1. **INSURANCE—Forfeiture—Change of Interest.** A person, after taking out policies of insurance on a stock of merchandise, payable to himself in case of loss, sold the stock, taking notes for the purchase money. The contract recited that the grantor "has granted, bargained and sold and by these presents does grant, bargain, sell and convey" the goods to the vendee, and the purchaser was placed in possession and allowed to sell the goods at retail. The contract also provided that the title should not fully pass until the notes were fully paid, and the purchaser was required to make weekly and monthly statements to the vendor showing the amount of sales and condition of the business. **Held,** that there was a change in the interest of the insured in the subject of the insurance, within the meaning of a provision in the policy that it should be void if any change should take place in the "interest, title or possession of the subject of insurance."

2. **SAME—Avoidance—Ownership of Property.** A vendor of a stock of merchandise, who places the vendee in possession with authority to sell at retail, is not the unconditional and sole owner of the merchandise, and a policy of insurance issued to him is void, within the provision of the policy that it should be void "if the interest of the insured be other than unconditional and sole ownership," notwithstanding a provision in the contract of sale that the title to the merchandise should not fully pass until the notes given for the purchase price were paid, and another provision requiring the vendee to make weekly and monthly statements of sale to the vendor.

(Syllabus by Rosser, C.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Actions by W. H. Quinette against the Phoenix Insurance
Company of Brooklyn, N. Y., by the same plaintiff against the
Mercantile Fire & Marine Insurance Company of Boston, and
by the same plaintiff against the Queen Insurance Company of
America. From judgments for plaintiff, defendants bring error.
Reversed and remanded.

*Burwell, Crockett & Johnson,* for plaintiffs in error.

*Stevens & Myers,* for defendant in error.

Opinion by ROSSER, C. The plaintiff, W. H. Quinette,
brought three actions, one against the Phoenix Insurance Com-
pany of Brooklyn, N. Y., one against the Mercantile Fire &
Marine Insurance Company of Boston, and one against the
Queen Insurance Company of America, upon insurance policies
for the sum of $2,500 each, issued on a stock of merchandise
located at Manitou, Okla., which was destroyed by fire. While
the actions were brought separately, it was agreed among the
parties that all three of the cases should be tried together on
the same evidence, and that the jury should return separate
verdicts in each case. At the close of the evidence each of the
defendants demurred to the evidence, and it was agreed that
the jury might be discharged and the cases decided by the court.
The court took the cases under advisement for a short time, and
then overruled the demurrer and rendered judgment in favor
of the plaintiff against each of the defendants, and, by agreement
of the parties, each of the defendants appeal upon one case-made.
It is agreed that they may be considered and decided together
here.

Two of the policies were written on the 25th of June, 1907,
and the third, issued by the Phoenix Insurance Company, was
written on the 18th day of July, 1907. Each of the policies con-
tained the following provision:

"This entire policy, unless otherwise provided by agreement
indorsed hereon or added hereto, shall be void if the insured

now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy, * * * or if any change, other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except a change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise."

Another provision in each of the policies was that the entire policy, "unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, * * * if the interest of the insured be other than unconditional and sole ownership."

On the 18th day of July, 1907, the plaintiff entered into the following contract with one E. A. Gray:

"This agreement, made and entered into by and between W. H. Quinette, of the city of Lawton, county of Comanche, territory of Oklahoma, of the first part, and E. A. Gray, of the same place, party of the second part, witnesseth: That for and in consideration of the sum of eight thousand nine hundred seventy dollars and eighty cents ($8,970.80), to be paid according to the terms of nine certain promissory notes of even date herewith, hereinafter more particularly described, the said party of the first has granted, bargained, and sold and by these presents does grant, bargain, sall and convey unto the said E. A. Gray all of the stock of groceries, dry goods, boots, shoes, notions, and so forth, being all of the stock of goods formerly owned by C. H. Putnam and kept in the town of Manitou, Oklahoma, save and except the hardware and implements, and being the same stock of goods purchased by said W. H. Quinette at trustee's sale in the matter of C. H. Putnam, bankrupt. It is expressly understood and agreed, that the title to said property shall not fully pass to the said E. A. Gray until the final payment of the notes herein provided for and which are to be paid as follows, to wit: $970.00 on September 1, 1907; $1,000.00 on October 1, 1907; $1,000.00 on November 1, 1907; $1,000.00 on December 1, 1907; $1,000.00 on January 1, 1908; $1,000.00 on February 1, 1908; $1,000.00 on March 1, 1908; $1,000.00 on April 1, 1908; $1,000.00 on May 1, 1908. Said notes to bear no interest until after May 1, 1908. It is further understood and agreed that out of the proceeds of the sale of said goods the said E. A. Gray may replenish the stock with such suitable articles as are absolutely necessary to maintain said stock in proper condition for disposal at retail, and that upon the full payment of the afore-

said notes the rest, residue and remainder of said stock of goods shall belong solely and only to said E. A. Gray, and the title to all goods then remaining shall thereupon pass wholly to said E. A. Gray, and rest solely and only in him, his heirs and assigns. The said E. A. Gray further agrees that he will pay all of the necessary expenses of carrying on and conducting said business, including rents, lights, fuel, clerk hire, advertising and such other expenses as may be incidental to the proper prosecution of said business.   It is further understood and agreed that if it shall be deemed advisable for the quick and proper disposition of said stock to remove the same from the town of Manitou, where it is now located, that the said E. A. Gray shall have the right so to do at such time as he shall deem proper, by and with the consent of the said W. H. Quinette."

On the 19th day of July, 1907, plaintiff and E. A. Gray entered into the following supplemental contract:

"As a part of the original agreement, it is further agreed by and between the parties hereto that the said E. A. Gray shall furnish to said W. H. Quinette a weekly account of cash and time sales, and purchase of goods, and that once each month there shall be made a full trial balance showing the condition of the stock, sales and purchase in such form as shall furnish the said W. H. Quinette full and complete information as to the then condition of said stock."

Gray then executed the notes provided in the contract and began to sell the goods.   At the time of the fire he had paid $2,470 of the purchase price, and had bought, in his own name, more than $2,400 worth of goods, which had been put in the stock in place of the goods sold.   He made weekly and monthly reports of sales to the plaintiff, and the plaintiff examined the stock of goods at intervals, and consented to the purchase of more goods by Mr. Gray.   The money that was paid plaintiff by Gray and the money which Gray paid for new stock was derived from the sales of the merchandise insured.   After the fire the original notes executed for the purchase price of the merchandise were taken up and new ones executed by Gray in their stead, and Gray paid the interest on the indebtedness up to the time of the trial.   At the time of the trial Gray owed the renewal notes given in place of those originally executed in payment of the purchase price of the goods.   After the fire Gray

sold the goods that had been saved, and deposited the proceeds in the bank in his name.

Defendants rely upon two propositions for reversal: First. That there was a change in the interest of plaintiff between the time the policy was written and the time when the fire occurred. Second. That plaintiff was not the unconditional and sole owner of the property.

It seems clear that both contentions must be sustained. At the time the first two policies were written Quinette was the unconditional and sole owner of the goods, and, so far as the record shows, had not made any contract whatever with reference to their sale. The third policy was written the same day the original contract of sale to Gray was made, and the day before the supplemental contract was made. The evidence is silent as to whether the third policy or the contract of sale to Gray was written first. It scarcely seems necessary to cite authorities to show that when Gray was put in possession under the contract set out above there was a change in plaintiff's interest. Prior to that time he was the unqualified and unconditional owner. From that time the vendee was in possession. He could sell and make title to articles sold out of the store in the course of the ordinary retail business, and he could and did buy, in his own name, goods to place in the stock. If Gray performed his contract, plaintiff could never regain the possession of the goods, and could have been compelled to make a further conveyance if necessary. It is not here decided whether a further conveyance would have been necessary if Gray had paid all the notes according to the contract. Gray had paid nearly one-third of the purchase price before the fire, and could have been compelled to pay the remainder, regardless of the loss. *Harley & Willis v. Stanley,* 25 Okla. 89, 105 Pac. 188, 138 Am. St. Rep. 900. See, also, *Dunn v. Yakish,* 10 Okla. 388, 61 Pac. 926. There was a change in plaintiff's interest. In *Gibb v. Fire Ins. Co.,* 59 Minn. 267, 61 N. W. 137, 50 Am. St. Rep. 405, the policy contained a provision the same as the one under consideration here. The property insured was buildings. After the policy was written Gibb made a written contract, whereby he sold and agreed to

convey to Kelley, Kelley to pay for the property in installments. Kelley took possession and made payments as required by the contract. It was held that there was a change in interest, and that Gibb could not recover. To the same effect are *Skinner & Sons Co. v. Houghton,* 92 Md. 68, 48 Atl. 85, 84 Am. St. Rep. 485; *Davidson v. Hawkeye Ins. Co.,* 71 Iowa, 532, 32 N. W. 514, 60 Am. St. Rep. 818; *Cottingham v. Fireman's Fund Ins. Co.,* 90 Ky. 439, 14 S. W. 417, 9 L. R. A. 627; *Vancouver National· Bank v. Law Union & Crown Ins. Co.* (C. C.) 153 Fed. 440; *Brickell v. Atlas Assur. Co.,* 10 Cal. App. 17, 101 Pac. 16.

Numerous cases hold that when a policy is issued to a partnership it is avoided by a transfer of the interest of one of the parties, even to the other partner. *Germania Fire Ins. Co. v. Home Ins. Co.,* 144 N. Y. 195, 39 N. E. 77, 26 L. R. A. 591, 43 Am. St. Rep. 749; *Keeler v. Niagara Fire Ins. Co.,* 16 Wis. 523, 84 Am. Dec. 714; *Dix v. Mercantile Ins. Co.,* 22 Ill. 272.

It is equally clear that at the time of the fire plaintiff was not the unconditional and·sole owner. From the time the contract of sale was made, and Gray placed in possession of the property, the plaintiff, if he held the title at all, held it as trustee for Gray upon payment of the price. In the case of *Loventhal v. Home Ins. Co.,* 112 Ala. 108, 20 South. 419, 33 L. R. A. 258, 57 Am. St. Rep. 17, the question was as to the ownership of the vendee in possession under a contract of sale. The court said:

"Speaking of the character of title such as Mrs. Loventhal's, we said, in *Wimbish v. Loan Association,* 69 Ala. 575: 'The general principle prevailing in a court of equity is that from the time a valid contract for the purchase of lands is entered into the vendor, as to the land, becomes a trustee for the vendee, and, as to the purchase money, the vendee becomes a trustee for the vendor. When, as in the present case, the agreement is, in its legal nature, executory, the vendor covenanting to make title on the payment of the purchase money at a future day, a court of equity, pursuing its own maxim of looking upon or treating that as done which ought to have been done, or which the parties contemplate shall be done in the final execution and consummation of the contract, for most purposes, regards the contract as specifically executed. The vendee is the equitable

owner of the land; the vendor is the owner of the purchase money. To the land a trust attaches; of it the vendor is seised for the use of the vendee. The trust binds the land, while the legal estate remains in the vendor; and it binds the heirs or devisee succeeding to it, and every one claiming under the vendor, with the exception of a *bona fide* purchaser without notice. 1 Story, Eq., secs. 789, 790. As land, the vendee may convey or devise it; and as land it is descendible to his heirs, who may, in a court of equity, compel the specific execution of the contract."

In further support of this rule, see *Dunn v. Yakish*, 10 Okla. 388, 61 Pac. 926; *Skinner & Sons Co. v. Houghton*, 92 Md. 68, 48 Atl. 85, 84 Am. St. Rep. 485; *Brewer v. Herbert*, 30 Md. 301, 96 Am. Dec. 582. It is not necessary to attempt to collect the authorities upon a proposition concerning which there can be no dispute.

It has been held in a number of cases that a vendee in possession of real property under a contract by which the vendor is to convey to him the legal title, when he has paid the purchase price, is the sole and unconditional owner. *Carey v. Allemania Fire Ins. Co.*, 171 Pa. 204, 33 Atl. 185; *Queen Fire Ins. Co. v. May* (Tex. Civ. App.), 35 S. W. 829; *Matthews v. Capitol Fire Ins. Co.*, 115 Wis. 272, 91 N. W. 675; *Imperial Fire Ins. Co. v. Dunham*, 117 Pa. 460, 12 Atl. 668, 2 Am. St. Rep. 686; *Ramsey v. Phoenix Ins. Co.* (C. C.) 2 Fed. 429; *Pelton v. Westchester Fire Ins. Co.*, 77 N. Y. 605; *Baker v. State Ins. Co.*, 31 Ore. 41, 48 Pac. 699, 65 Am. St. Rep. 807; *Brickell v. Atlas Assur. Co.*, 10 Cal. App. 17, 101 Pac. 16; *Milwaukee Mechanics' Ins. Co. v. Rhea*, 123 Fed. 9, 60 C. C. A. 103, opinion by Lurton; *Hough v. City Fire Ins. Co.*, 29 Conn. 10, 76 Am. Dec. 581.

In *Matthews v. Capital Fire Ins. Co.*, 115 Wis. 272, 91 N. W. 675, the court said:

"Is the interest of the vendee of realty under a land contract 'sole and unconditional ownership,' within the meaning of that provision of the standard policy requiring such ownership as a condition precedent to the validity of an insurance contract made in accordance therewith? This court held contrary to appellant's position on that point in *Davis v. Furniture Co.*, 102

Wis. 394, 78 N. W. 596. That decision is in harmony with holdings of this court made prior to the enactment of the standard policy law. The authorities elsewhere are uniform to the same effect. The idea is that equitable ownership is, properly speaking, entire and sole ownership as regards the real purpose of the provision commonly used in insurance contracts on that subject. It does not seem that we are called upon to reconsider or discuss a matter so well settled as the law of the subject in question."

And the court cites a number of authorities in support of this statement.

It would seem to follow that if the vendee is the sole and unconditional owner that the vendor could not be so, and this is apparently conceded in the brief of appellee.

In *Rosentock v. Insurance Co.,* 82 Miss. 686, 35 South. 312, the court said:

"The vendor in a written land contract, who has admitted the vendee into possession and received from him large payments on the purchase money, is not 'the sole and unconditional owner,' within the meaning of that clause in this policy, although he retains the legal title. In *Strickland v. Kirk,* 51 Miss. 785, it is said: 'The vendor is treated by the courts as mortgagee, and his retention of the title operates as an equitable mortgage.' "

The same rule is announced in *Hamilton v. Dwelling House Ins. Co.,* 98 Mich. 535, 57 N. W. 735, 22 L. R. A. 527; *Vancouver National Bank v. Law Union & Crown Ins. Co.* (C. C.) 153 Fed. 440; *Brecht v. Law Union & Crown Ins. Co.* (C. C.) 153 Fed. 452.

Most of the authorities upon this proposition are cases where the property destroyed was buildings, and as such were real property; but the same rule applies also to personalty. *Vancouver National Bank v. Law Union & Crown Ins. Co.* (C. C.) 153 Fed. 440; *Pennsylvania Fire Ins. Co. v. Hughes,* 108 Fed. 497, 47 C. C. A. 459. Especially should it apply in a case of this sort, where the title was so far vested in the vendee as to give the right to sell the goods at retail.

There was no proof of consent by the insurance companies to the sale, or of waiver of the condition.

The judgment should be reversed and the cause remanded. By the Court: It is so ordered.