FIRE ASS'N OF PHILADELPHIA v. PER-
RY et al.   (No. 7092.)*

(Court of Civil Appeals of Texas.   Galveston.
March 16, 1916.)

1. INSURANCE ⬤⟿665(3)—CHANGE IN INTER-
EST IN PROPERTY—CONDITIONAL SALE—SUF-
FICIENCY OF EVIDENCE.

Evidence in an action on a policy of fire
insurance, covering certain billiard and pool
tables situated in a certain building, providing
that any change, other than by the death of the
insured, in the interest, title, or possession of
the subject of insurance, except change of oc-
cupants without increase of hazard by the vol-
untary act of the insured, should avoid the
policy, *held* to show that, after its issuance, the
insured had made a conditional sale of the prop-
erty on the security of a chattel mortgage and
had received payments of part of the buyer's
notes before the loss.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 1711–1716; Dec. Dig. ⬤⟿665(3).]

2. INSURANCE ⬤⟿328(5)—FORFEITURE—PLACE
OF CONDITION—INTEREST IN PROPERTY.

Under such policy, a conditional sale before
the loss was a change other than by the death
of the insured in the interest, title, and pos-
session of the insured property avoiding the
policy and defeating the insured's recovery
thereon.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 799; Dec. Dig. ⬤⟿328(5).]

3. CONTRACTS ⬤⟿10(4) — MUTUALITY—CONDI-
TIONAL SALE—ENFORCEMENT.

A contract by the owner of billiard and
pool tables, etc., situated in a certain building
placing another in possession under the agree-
ment that after a certain amount was paid by
him in monthly payments, and that if mean-
time he refrained from drinking and lived with
his wife, the property was to be his, and under
which the buyer gave a series of notes secured
by a chattel mortgage and paid part of such
notes and was fully performing his part of the
contract, was not unenforceable for want of
mutuality.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 37; Dec. Dig. ⬤⟿10(4).]

Appeal from District Court, Harris Coun-
ty; Wm. Masterson, Judge.

Action by Rene Perry and another against
the Fire Association of Philadelphia.   Judg-
ment for plaintiffs, and defendant appeals.
Reversed and judgment rendered for defend-
ant.

Gill, Jones & Tyler, of Houston, for appel-
lant.   Robert & Sears, and C. M. Fairchild,
all of Houston, for appellees.

LANE, J.   This suit was instituted by
Misses Rene Perry and Nora Perry against
the Fire Association of Philadelphia, an in-
surance corporation, hereinafter called Insur-
ance Company, to recover upon a certain pol-
icy of fire insurance for $2,000, issued by
said Insurance Company to Rene and Nora
Perry on the 23d day of January, 1913, which
covered certain billiard and pool tables, balls,
cues, etc., claimed by plaintiffs, situated in a
certain building in Houston, Tex.

The defendant Insurance Company answer-
ed, admitting the execution and delivery of
said policy, but it says that said policy con-
tains, among other things, the following
clause:

"This entire policy, unless otherwise provided
by agreement indorsed hereon or added hereto,
shall be void if the hazard be increased by any
means within the control or knowledge of the
insured; or if the interest of the insured be
other than unconditional and sole ownership;
or if the subject of insurance be personal prop-
erty and be or become incumbered by a chattel
mortgage; or if, with the knowledge of the in-
sured, foreclosure proceedings be commenced or
notice given of sale of any property covered by
this policy by virtue of any mortgage or trust
deed; or if any change, other than by the
death of an insured, take place in the interest,
title or possession of the subject of insurance
(except change of occupants without increase of
hazard) whether by legal process or judgment or
by voluntary act of the insured, or otherwise."

It further says that, if plaintiffs ever
acquired the unconditional ownership of the
property described in said policy, they sold
the same to their brother, L. E. Perry, on
or about the 1st day of February, 1913, and
received in payment therefor from the said
L. E. Perry his 20 promissory notes for the
sum of $150 each, numbered from 1 to 20 in-
clusive, all dated at Houston, Tex., February
1, 1913, and payable respectively on March
1, 1913, and monthly thereafter until all are
paid; that said notes were delivered by said
L. E. Perry to plaintiffs, and that they ac-
cepted same in payment for an interest in
said property; that during the period from
the date of said notes, to wit, February 1,
1913, to the date of the fire which destroyed
the insured property, five of said notes were
paid to plaintiffs, and that by each of said
payments a change in the title or interest of
plaintiffs in said property described in said
policy occurred, and that, at and prior to the
time of the fire which destroyed said in-
sured property, an interest in the same had
passed from plaintiffs to L. E. Perry, and
that at the time of the fire plaintiffs were
not the unconditional owners of said proper-
ty; that plaintiffs, under the conditional
sale hereinbefore mentioned, placed L. E.
Perry in possession of said property, and
thereafter L. E. Perry conveyed an interest
therein to one B. H. Tinsley, who, together
with said L. E. Perry, in conducting a bil-
liard and pool hall business, took possession
of all said insured property on the 1st day
of February, 1913, which business they con-
tinued up to the time of the fire which de-
stroyed said property, under the following
contract:

"Know all men by these presents: That we,
L. E. Perry, of the county of Harris and state
of Texas, and B. H. Tinsley, also of said coun-
ty of Harris, state of Texas, do hereby agree
and do hereby make these our articles of agree-
ment, and do enter into a partnership on equal
shares, and do hereby agree, covenant and stip-
ulate as follows:

"(1) The partnership business is to conduct
a billiard and pool hall now situated at No.
1915½ Preston avenue in the city of Houston,
and known as the Brunswick Billiard Par-
lor, and same shall be the style of our firm name

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error dismissed in Supreme Court.

and under which we propose to conduct business.

"(2) Whereas, said billiard and pool business is now owned by said Perry by virtue of a bill of sale from Misses Rene and Honora Steele Perry, who bought same from J. S. Taylor; and whereas, said Misses Perry had made their bill of sale to said Perry, and the said Perry has given to said Misses Perry a chattel mortgage on said business and all personal property therein to secure the whole of the purchase price, to wit, $3,000, which is payable in 20 installments of $150 each, payable monthly, with interest thereon from February 1, 1913, the date of said notes, at the rate of 10 per cent. per annum; and whereas, we each expect to pay off said notes as they fall due from the money taken in from conducting said billiard parlor; and whereas, we each agree to put in our personal time and attention to said business, at such hours as we may agree upon, and to devote our energies to making said business pay: Now, therefore, in consideration of the premises and in consideration of $1, the receipt of which is hereby acknowledged, the said L. E. Perry has bargained sold, and conveyed and delivered, and does by these presents hereby bargain, sell, and convey and deliver, unto the said B. H. Tinsley, an undivided one-half interest in and to said business as described in said bill of sale made to said L. E. Perry, the same consisting of the following described personal property, to wit: All the personal property now contained in the billiard hall known as the Brunswick Billiard Parlor, at No. 1915½ Preston avenue, in the city of Houston, in said Harris county, Tex., including the right to use said name, and also the good will of said business, the property therein contained being all that is now therein, and being the same so purchased by me from said Misses Perry, consisting in part of two billiard tables, ten pool tables, balls, bridges, cues and racks, chairs, a safe, a cash register, and a cigar case, and stove, to have and to hold unto the said B. H. Tinsley, his heirs and assigns, forever. This sale is, however, subject to said mortgage given by me to said Misses Perry, it being our understanding that we are going into together to buy this place, and to that end try to earn enough together in said business to pay off said mortgage and notes, so that when that is done we shall be equal partners and equally own said business and property.

"(3) We each agree that out of the money taken in from said business each month, that we pay off one of said notes with interest due thereon, and that we will try to be economical in conducting said business and in our expenses, so that we may be able to meet each note as it falls due. Neither party can sell their interest except by mutual agreement in writing. Not over $10.00 a week to be drawn.

"(4) The said Perry agrees to execute and deliver to the said Tinsley an unconditional bill of sale to an undivided one-half of said property, when same shall have been paid in full according to the terms of this agreement by the said Perry and the said Tinsley, and after same is released from said mortgage.

"(5) This contract of partnership is executed in duplicate. This the 1st day of February, A. D. 1913.  [Signed] L. E. Perry.

        "B. H. Tinsley."

That by reason of the facts hereinbefore alleged and otherwise, the interest of the insured in the property described in said policy was not the unconditional and sole ownership at the time of the issuance of said policy, nor at any time thereafter, nor at the time of the fire, if any, and that a change other than by the death of the insured, or either of them, took place in the interest, title, and possession of the subject of insur-

ance, in violation of the conditions, stipulations, provisions, and warranties contained in said policy, and hereinbefore set forth, whereby said policy became and is null and void according to its terms. Defendant further says that by reason of the facts above alleged and otherwise, and independently thereof, the provisions, stipulations, conditions, and warranties in said policy, as hereinbefore set forth, were breached by the plaintiffs herein prior to the 28th of July, 1913, either because the interest of the insured was other than the unconditional and sole ownership of the subject of insurance at the time of the issuance of said policy, and at all times thereafter, or else because after the issuance of the policies sued on a change took place in the interest, title, and possession of the subject of insurance, and in the interest, title, and possession of the subject of insurance (other than a change of occupants without increase of hazard) by the voluntary act of the insured prior to the date of the fire, if any, whereby said policy became and is null and void and unenforceable. That the policy sued on is void and unenforceable, according to its terms, because the interest of the insured in the property was not truly stated therein; because the interest of the insured therein was not the unconditional and sole ownership; and because by the voluntary act of the assured after the issuance of the policy and prior to the fire, if any, a change other than by the death of the insured took place in the interest, title, and possession of the subject of insurance other than a change of occupants without increase of hazard, all in violation of the conditions, provisions, stipulations, and warranties in said policy hereinbefore set forth. That each and all of said violations and breaches aforesaid were material both to the risk and the rate, and the compliance with each and all of the above-mentioned conditions, provisions, and stipulations were conditions precedent to any recovery on said policy, and were promissory warranties on the part of the insured, the violation of which avoided the policy.

Appellees' contention is that they were at all times from the date of the policy of insurance to the date of the fire the sole and unconditional owners of the insured property; that they had only placed L. E. Perry in charge of the pool hall business as their manager, with the understanding, however, that if he, L. E. Perry, would quit drinking and live with his wife—in other words, live with his wife and live a moral life—and pay them back the $3,000 paid by them for the property, they would give the property to said L. E. Perry, but that the title to said property remained in them absolutely and unconditionally until said L. E. Perry had complied with the conditions above stated.

Appellant's contention is that the plaintiff purchased said pool hall business for their brother, L. E. Perry, and agreed and con-

tracted with him that if he would take possession of said business and pay them $150 per month, as evidenced by certain notes executed and delivered by said L. E. Perry to plaintiffs, until $3,000 and interest thereon shall have been paid, they (plaintiffs) would convey said property to said L. E. Perry, and that under said agreement the property was turned over to said L. E. Perry, who thereafter, in undertaking to carry out his part of said agreement or contract, paid to plaintiffs five payments of $150 each, and that plaintiffs accepted such payments as a part compliance with said agreement on the part of L. E. Perry and canceled and returned one of said notes upon each payment; that by reason of the transactions and agreements above mentioned an interest in said insured property in fact passed from plaintiffs to said L. E. Perry, and therefore plaintiffs were not the unconditional and sole owners of the insured property at the time of the fire which destroyed same, and under the terms of the policy sued upon they are not entitled to a recovery in this cause.

The case was tried by a jury upon special issues submitted to them by the court, and they found that plaintiffs were the unconditional owners of the property insured and destroyed by fire, and also found all other issues submitted to them in favor of plaintiffs. Upon the findings of the jury the court rendered judgment in favor of plaintiffs against said Insurance Company for $2,000, and interest thereon from date of judgment. From this judgment the Insurance Company has appealed.

Appellant's first assignment is as follows:

"The court erred in refusing to give defendant's specially requested instruction No. 1, being a request for a peremptory instruction as follows: 'You are instructed to return a verdict in this case in favor of the defendant, Fire Association of Philadelphia, that plaintiffs take nothing by their suit against it,'—because the undisputed evidence affirmatively shows that a change, other than by the death of the insured, took place in the title and interest of the insured in the subject of insurance by the voluntary act of the insured after the issuance of the policy, and before the fire, whereby the policy sued on became null and void and unenforceable."

The disposition of this assignment requires a careful consideration of the evidence most favorable to the plaintiffs, and should such evidence show that after the issuance of the policy sued on, and before the fire which destroyed the property insured, plaintiffs made a conditional sale of said property to L. E. Perry, they cannot recover in this suit. Therefore we deem it advisable to here set out the substance of plaintiffs' evidence upon the question of such sale, which we here do, as follows:

Miss Rene Perry testified:

"I am one of the plaintiffs. * * * I closed the deal on behalf of my sister and myself for the pool and billiard room business located at Preston and Fannin. * * * We bought for ourselves as far as money in itself was concerned, but I bought the business for my brother, trying to give him something to really make something out of himself. I put in my brother, Edgar Perry, as manager. His duties were to see that the poolroom was run properly. He had charge of it and ran it for us. That place was destroyed by fire about the 28th of July. I had the policy of insurance."

On being questioned as to a sworn statement made by her before a notary public as to the ownership of the property in question, she said:

"That is my signature to the sworn examination. I don't recall reading the paper over. I know I signed it in Mr. McCarthy's office here in the courthouse and swore to it. I didn't state that I swore to it without taking the time to read my testimony of three pages, I say I did not recall whether I did. As to whether or not the report of this examination, as written here, is correct, there was one question here that my explanation was not put in at all. * * * In answering the question, 'What was the consideration your brother, L. E. Perry, was to pay you and your sister for the pool and billiard equipment?' the sworn statement shows my answer was, '$3,000 including 10 per cent. interest.' With reference to this question and answer I said: 'When I drew out the $3,000, there was no question of interest when I drew out the $3,000. We put in the business, and, if Edgar had made good at that time, then I would give him the place for himself without any further compensation from him.' I wanted to cut out the word 'interest.' There was no question of interest, because I have never gotten any interest of any kind. With that addition the question and answer are correct."

In answering the question in the sworn statement, "How was he to pay you the $3,000?" her answer is shown to have been, "Take up the notes." In explanation of this answer she said, while testifying at the trial:

"Mr. Bucklew insisted on putting in 'Take up the notes.' That reads like I said it. As to whether or not I said, 'Take up the notes at $150 per month,' I now answer, in using them as receipts, because they were not notes. * * * I did add to that answer (which was not inserted), 'They were not notes, it was $150 a month I was to draw out of the business, that I had as my interest in the business.'"

The witness further testified that the notes were to bear 10 per cent. interest, but they were never considered by her as notes. Five of these notes were taken up by L. E. Perry, and that she delivered them to Perry as receipts and not as notes. She testified that she had put in $3,000 and had only drawn out $150 a month for five months, and that she was to draw out her full $3,000, and that after she had realized that much, and if Edgar made good, the business was his as a present. On being asked if she had not stated on her sworn examination that the notes referred to were the ones executed by L. E. Perry, she answered that they are, and that she had nothing to add to such answer.

The twenty notes referred to by their terms were to be paid one each month until all of them were paid, and, omitting dates of payment, read as follows:

"150.00. Houston, Texas, Feby. 1st, 1913.

" * * * after date, for value received, I promise to pay to the order of Rene Perry and Honora Steele Perry, one hundred and fifty dollars at Houston, Texas, with 10% interest per annum from date until paid.

"And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of ten per cent. on principal and interest of the note shall be added to the same as collection fees.

"Due ———, 1913. L. E. Perry."

The witness was asked, "Did you furnish any inventory other than the bill of sale referred to from Taylor to you, to your brother, L. E. Perry, when you sold him the billiard and pool equipment?" and she answered, "No, sir." At the trial she testified that the question and answer as above set out is correct and that the answer then given is still her answer. The witness was then asked if the following question and answer were not asked and given in the examination referred to, to wit:

"Q. Then the agreement between your brother, sister, and yourself was that you were to transfer to him all the billiard and pool equipment that you purchased from J. S. Taylor, and you were to receive twenty notes, of $150 each, payable monthly, bearing interest at ten per cent. per annum from date on each note, is that right? A. That has the same explanation. I said, 'Yes, sir;' and I explained and gave the same explanation I have used throughout this testimony. I made the answer, 'Yes, sir,' to the question, 'And upon that verbal agreement did you deliver to your brother, L. E. Perry, deliver and turn over to him, all the billiard and pool equipment purchased from J. S. Taylor, to be used and handled as he saw fit for his own benefit, when he delivered to you the twenty notes above referred to?' My whole answer was, 'Yes, sir; when he took those all up and when he made good.' The next question and answer, 'Had you any mortgage other than those notes against the property?' to which I answered, 'No, sir,' is correct. By the words, 'if Edgar made good,' I mean if he had quit drinking entirely and treated his wife properly and lived with her properly as he should have done; in other words, be a real man—that is what I meant by making good. I don't mean the business. I am talking about him himself. The business was not to be his until he did do that; that is, until he did those two things—treated his wife properly, that is, lived with his wife, go back to his wife, and quit drinking. Those were the two things. This trade changed before the fire, because I came very near taking the business away from him twice. That understanding stood from the time I first put him until the fire. We never changed our agreement. I was perfectly willing to give it to him if he would make good. There was no change up to the time of the fire."

That the contract between L. E. Perry and Tinsley, as hereinbefore set out, was executed, and that the parties thereto were acting thereunder with reference to said billiard and pool hall business from the date of its execution, to wit, on the 1st day of February, 1913, there is no dispute.

L. E. Perry testified for plaintiffs and substantially supported the testimony of Miss Rene Perry with reference to the agreement between her and him, as to his right in the property. Both L. E. Perry and B. H. Tinsley testified that the earnings of the business were about $850 to $900 per month; that the expenses were about $266 per month, and that Miss Perry was paid $150, or about

that sum, each month; that the difference between the expenses and the amount paid Miss Perry and the earnings went into the business, and that during the time they were in charge of the business they had bought a billiard table and other property and added it to the business before the fire.

L. E. Perry also testified:

"I bought the new stuff in my own name. It is mortgaged in my name in the county clerk's office."

[1] A careful examination of the evidence in this case will show that the following facts are firmly established by the testimony of the plaintiff and her witnesses, and are admitted to be true: That is, that the insured property was purchased by plaintiffs from J. S. Taylor on the 22d day of January, 1913, for their brother, L. E. Perry; that the policy sued on was dated January 23, 1913; and that on February 1, 1913, plaintiffs placed their brother, L. E. Perry, in possession of the property under the agreement, understanding, and arrangement that if $3,000 were paid to plaintiffs by L. E. Perry in monthly payments of $150 per month, and if meantime L. E. Perry had refrained from drinking and lived with his wife, the property would be his.

The sum and substance of the testimony of the plaintiff Miss Rene Perry is that she bought the business for her brother, L. E. Perry; that she had paid $3,000 for the same; that L. E. Perry had paid her five payments of $150 each under the agreement between them that she was to be repaid the $3,000 she had put into the business; that after said $3,000 was paid and if L. E. Perry quit his bad habits and returned to his wife to live with her, the business was to be his.

We think no other conclusion can be reached than that a conditional sale of the property had been made by the Misses Perry to L. E. Perry on the 1st day of February, 1913, and that he was carrying out his part of the agreement at the time of the fire which destroyed the property; that, had the property not been destroyed, L. E. Perry could have carried out his part of the agreement between himself and his sisters and have become the sole owner of the property; and that his sisters, plaintiffs herein, could not, over his protest or objection, have arbitrarily canceled said agreement.

[2] We therefore conclude that by the voluntary contract or agreement of the plaintiffs there was a change, other than by the death of the insured, in the interest, title, and possession of the insured property, and in view of the fact that the policy of insurance provided that "if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance, the entire policy shall become void," plaintiffs cannot recover in their suit upon said policy, and it therefore follows that the court erred in not rendering

judgment for defendant, Fire Association of Philadelphia. East Texas Fire Ins. Co. v. Clarke, 79 Tex. 23, 15 S. W. 166, 11 L. R. A. 293; Rochester German Ins. Co. v. Schmidt, 162 Fed. 447, 89 C. C. A. 333; May on Insurance, par. 287; Hartford Fire Ins. Co. v. Keating, 86 Md. 130–145, 38 Atl. 29, 63 Am. St. Rep. 499; Fire Association v. Flournoy, 84 Tex. 632, 19 S. W. 793, 31 Am. St. Rep. 89; Phoenix v. Quinette, 36 Okl. 384, 128 Pac. 722.

In the case of East Texas Fire Ins. Co. v. Clarke, supra, in discussing a similar provision in a fire insurance policy, our Supreme Court says:

"The word 'interest,' as defined in Abbott's Law Dictionary, means 'any right in the nature of property but less than title. Its chief use seems to designate some right attaching to property which either cannot or need not be defined with precision.'"

In the case of Fire Association v. Flournoy, supra, it is said:

"It appears from the evidence on the 31st day of January, 1888, Brady Bros. and Tinkle & Black entered into a written contract, in consideration of $400 paid to Brady Bros., and other payments to be made by Tinkle & Black, whereby Brady Bros. leased to Tinkle & Black for the term of three years, commencing February 1, 1888, all the property covered by the policy. The agreement states the time and amount of each subsequent payment, and contains this stipulation: 'It is further hereby expressly understood and agreed by and between the parties to this contract that should the party of the second part, on or before November 3, 1888, pay to party of the first part an additional sum of $26.85, then and in that case the party of the first part doth hereby sell, transfer, and convey unto the party of the second part the absolute title and ownership of all of said furniture and property.' By the terms of the policy it is provided 'that, if any change takes place in the title, interest, or possession of the property, except in case of succession by reason of the death of the assured, whether by sale, transfer, or conveyance, in whole or in part,' etc., it shall become void. The court instructed the jury that the contract between Brady Bros. and Tinkle & Black created a change in the title to the property. We think this a proper construction of the contract. Insurance Co. v. Clarke, 79 Tex. 24, 15 S. W. 166 [11 L. R. A. 293]; Smith v. Insurance Co., 3 Cal. Unrep. Cas. 244, 23 Pac. 384."

[3] Appellees contend, however, that if it be assumed that the contract between Miss Perry and L. E. Perry was one otherwise enforceable, L. E. Perry was never entitled to specific performance, because acts on his part remained to be done which no court could force him to do; that if it be admitted that Miss Perry contracted to sell the property to L. E. Perry if he paid $3,000 in monthly installments of $150, quit drinking and lived with his wife, such conditions could not be enforced as against L. E. Perry, and therefore the necessary elements of mutuality is lacking.

We cannot altogether agree to such contention. The undisputed evidence shows that L. E. Perry paid to appellee $750 of the money consideration named in the contract or agreement between himself and his sisters, and so far as the evidence discloses was fully performing his part of the contract at the time of the destruction of the property.

In the case of Halff Company v. Waugh, 183 S. W. 839, decided by this court on the 20th day of January, 1916, it is said:

"It is true that the contract does not bind the defendant to perform any of its provisions, and that it is for this reason unilateral; but the mere want of mutuality did not render the contract unenforceable after defendant had accepted * * * the truck, and in all things performed his part of the agreement, especially after he had paid $729.83 in part performance, and offered to strictly carry out its terms until the full purchase price of the truck should be paid. Hawralty v. Warren [18 N. J. Eq. 124], 90 Am. Dec. 613; Pittsburg Brick Co. v. Bailey [76 Kan. 42, 90 Pac. 803], 12 L. R. A. (N. S.) 745; Allegheny Oil Co. v. Snyder [106 Fed. 764] 45 C. C. A. 604; Schroeder v. Gemcinder, 10 Nev. 355; McAfee v. Crubb, 164 S. W. 925."

We think the rule laid down in the above quotation a sound one. If it were not so, then in this case Miss Perry would have had the right to declare her agreement with her brother, L. E. Perry, at an end, and have taken possession of the billiard and pool hall at any time, even after L. E. Perry had, in strict conformity to the terms of said agreement, paid all but one monthly payment of $150, and had up to the time of the fire fully complied with all other provisions of said agreement. We think it was clearly contemplated that L. E. Perry should be the owner of the property in question at the end of 20 months if he paid $150 per month until the $3,000 was paid, and had during this time quit drinking and lived with his wife.

What we have already said, and in view of the disposition we shall make of the case under appellant's first assignment, renders a consideration and discussion of the remaining assignments unnecessary.

As it appears that the case was fully developed, and it further appearing that plaintiffs were not entitled to recover, and that defendant was entitled to a peremptory instruction, the judgment of the trial court in favor of plaintiffs is here reversed and judgment is rendered for defendant.

Reversed and rendered.