[Civil No. 1855.   Filed April 5, 1922.]

[205 Pac. 589.]

## ARIZONA FIRE INSURANCE COMPANY, a Corporation, Appellant, v. C. D. DILLINGHAM, Appellee.

1. INSURANCE—AGREEMENT FOR EXCHANGE HELD TO SHOW TITLE TO PROPERTY INSURED HAD PASSED BEFORE FIRE.—Agreement by owner of an insured stock of goods to exchange the stock and certain lands owned by him for other lands, he to give possession of the stock immediately, the other party to apply proceeds from the sale thereof to the indebtedness assumed by him, shows that the change in title occurred on transfer of possession, which was before the fire destroying the goods, though no deeds for the conveyance of the lands exchanged had then been executed, especially where the conduct of the parties was in accord with that construction.

2. EVIDENCE — WRITING IS BEST EVIDENCE OF TERMS OF WRITTEN CONTRACT.—Where the parties have reduced their contract in writing which is clear and unambiguous, the writing is, in the absence of fraud or mistake, the best evidence of the terms of the agreement.

3. CONTRACTS—NO CONSTRUCTION BY PARTIES WHERE CONTRACT UNAMBIGUOUS.—The interpretation of a clear and unambiguous written contract is for the court, and not for the parties thereto.

4. INSURANCE—PROVISION IN FIRE POLICY AGAINST CHANGE OF INTEREST IS VALID.—The provision in a fire insurance policy mak-

---

Contract to convey as breach of condition against change in title or interest of insurer, notes, 3 Ann. Cas. 710; 9 Ann. Cas. 461; Ann. Cas. 1913C, 173; 3 L. R. A. (N. S.) 107.

ing it void if any change take place in the interest, title, or possession of the property without the consent of the insurer is part of the New York standard form which Civil Code of 1913, paragraph 3440, requires every insurance company doing business within the state to use, and is reasonable and valid.·

5. INSURANCE — INSURED CANNOT IGNORE PLAIN REQUIREMENTS OF POLICY.—Though the courts universally strive to uphold the right óf the insured to recover and place the burden upon the insurer to point out wherein the terms of the policy have been violated by indubitable and conclusive evidence, a company meeting such requirement is entitled to protection as much as any other litigant, and the insured cannot, with absolute immunity, ignore the agreements he made in the policy.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed.

Messrs. Ward & Griffith, for Appellant.

Messrs. Kibbey, Bennett, Gust & Smith and Mr. A. T. La Prade, for Appellee.

ROSS, C. J.—This is a suit by the insured, C. D. Dillingham, to recover from the insurance company a fire loss. The policy, running for one year, was dated March 3, 1919, and covered a stock of general merchandise which was destroyed by fire on May 24, 1919. The insurance company refusing to pay the loss, suit was instituted for the full amount of policy, $2,000, fifteen per cent penalty, and reasonable attorneys' fees. The insurance company filed a general demurrer to the complaint. It also set forth in its answer that the insured, before the fire, had sold and delivered possession of the stock of merchandise to one J. E. Anderson, who continued to carry on the business, selling and replenishing the stock of goods; that said sale and delivery of possession to Anderson was without the knowledge or consent of the insurer. It is alleged that such sale violated that clause of the contract of insurance against any change in the inter-

est, title, or possession of the property without the consent of insurer. There were other defensive matters in the answer, but this statement will present the vital questions at issue. The jury returned a verdict for the full amount of the insured's claim. Whereupon the court entered judgment for $2,000 damages, and the statutory fifteen per cent penalty. The court, after taking proof, allowed attorney's fees in the sum of $400. The defendant, insurance company, appeals from the judgment, and from the order refusing a new trial.

From the conclusion we have come to, it will be necessary for us to consider but one of the errors assigned. At the close of the case the appellant moved the court for an instructed verdict, and we think the court's refusal to grant it was error. One of the conditions of the insurance policy was:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise. . . . "

It is not contended that the appellant consented to, or knew of, any change in the interest, title, or possession of the subject of insurance from appellee to anyone else.

The appellant attached to its answer as an exhibit, and also introduced in evidence to sustain its contention that the appellee had sold the stock of merchandise and delivered possession thereof to one J. E. Anderson, the following agreement:

"An Agreement of Sale.

"This agreement made and entered into this 1st day of May, 1919, between C. D. Dillingham, hereinafter designated the 'first party,' and J. E. Ander-

son, hereinafter designated the 'second party' . . .
witnesseth: That,

"Whereas, the first party the owner of a stock of
mixed merchandise consisting of groceries, hardware,
dry goods and drugs, situated three miles north from
Tolleson, Maricopa County, Arizona, in the store
building known as 'West End Store' and now occupied
by first party under a lease on said building; and said
first party being also the owner of the following de-
scribed land, to wit, NE. ¼ of Sec. 6, Tp. 12 N., range
26 W. Ind. M., in the state of Oklahoma, and the
county of Rodger Mills, and consisting of 160 acres.
Second party is the owner of 160 acres of land in
Beckham county, state of Oklahoma and described as
NE. ¼ of Sec. 26, Tp. 11 N., R. 22 W. of Ind. M.:

"Therefore, said first party contracts to sell unto the
second party for the consideration hereinafter stated,
the stock of merchandise hereinbefore described, and to
give second party immediate possession thereof. The
said second party agrees to assume indebtedness of
first party for scales, oil tank, one ton truck and
stock of merchandise herein described to the amount
of twelve hundred fifty ($1,250) dollars. It being
understood that if first party should elect to retain
the scales referred to, that the amount of indebted-
ness assumed by second party shall be eleven hundred
fifty ($1,150) dollars and no more. That the first
party assumes all other indebtedness that may be
against said stock of merchandise.

. "First party further agrees that as soon as he can
conveniently obtain his abstract of title to the lands
hereinbefore described as belonging to him, and which
abstract shall show a complete title in him, to deed
the same to second party by good and sufficient deed
therefor, free from all encumbrances of whatsoever
nature. And in consideration of the foregoing cove-
nants by the first party hereto, the second party
hereto agrees to make a good and sufficient deed to
first party to the lands hereinbefore described as be-
longing to second party, said deed to show the lands
so deeded to be free from all encumbrances except a
mortgage thereon in the sum of fifteen hundred
($1,500) dollars which said encumbrance the first
party hereto agrees to assume.

"It is mutually understood between both parties hereto, that the abstracts of title to said land shall be obtained in a reasonable time from this date, and, should any latent defects in the title of either of said two tracts of land be found, then said party that now holds the title to said tract, and who is hereby contracting and selling the same to the other party, shall have, and it shall be his duty to remove said defects therefrom. It is further understood that by the taking possession immediately of the stock of merchandise hereinbefore described, the party of the second part shall apply all moneys received from sales thereof for the purpose of replenishing said stock of goods and liquidation of the said sum of twelve hundred fifty ($1,250) dollars until the said sum of twelve hundred fifty ($1,250) dollars is fully paid and discharged.

"It is further understood and agreed that the lands that are hereby contracted to be exchanged between the parties hereto, each have crop tenants thereon for the year 1919, and that this contract carry the right of immediate possession to each of said tracts of land to each of the respective parties hereto upon the signing hereof, subject to the rights of said tenants. It is further understood that should the said indebtedness be less than $1,250, that second party will pay the difference between the sum of indebtedness and that of $1,250.

"Witness our signatures hereto the day above written.

"C. D. DILLINGHAM,
"J. E. ANDERSON."

The day of the date of the above agreement Anderson took charge of the West End Store and stock of merchandise and continued in charge thereof until May 24th, when the building and contents were destroyed by fire. During that time the stock on hand was sold from day to day, and out of the receipts Anderson paid some $600 or $700 of the debts he had assumed. The stock was replenished in part with receipts from the business, and in part with goods

bought on credit and charged to Anderson. Appellee let it be generally known to his old customers that he had sold the store to Anderson. He introduced Anderson to the wholesalers of Phoenix with whom he had been trading as his successor in the ownership of the West End Store, and advertised in a local paper that he had sold "his stock of goods at West End Store to J. E. Anderson on the eighth day of May." Anderson became the tenant of the store building and attorned to the landlord for the rent. Appellee did not quit the store, but remained there and employed himself in and about the carrying on of the business in the capacity of an employee, according to the testimony of Anderson, and according to his own admissions and statements made before the fire.

After the fire, the deeds for the land mentioned in the contract not having been exchanged, and the deal fully consummated, appellee took the position that there was no transfer of title, interest, or change of possession of the stock of merchandise, and actually testified at the trial that he remained in the store after Anderson took charge, not as an employee, but as owner. In other words, he testified in effect that there was no sale of the goods to Anderson and no delivery of possession, and that none was intended until the exchange of the deeds for the land. This position of appellee is in direct conflict with his written agreement, for therein he contracted "to give second party (Anderson) immediate possession" of the stock of merchandise with the power and authority to sell and replenish the same as though he were the absolute and unconditional owner, and the following condition in the agreement of sale can mean nothing less:

"It is further understood that by taking possession immediately of the stock of merchandise hereinbefore

23 Ariz.—33

described the party of the second part (Anderson) shall apply all moneys received from sale thereof for the purpose of replenishing said stock of goods and liquidation of the said sum of $1,250 until the said sum of $1,250 is fully paid and discharged."

The conduct of appellee and Anderson, until the fire, was in entire harmony and accord with the terms of the written contract.

It is elementary where the parties have reduced their contract to writing, in the absence of fraud or mistake, the writing, being clear and unambiguous, is the best evidence of the terms of the agreement, and its interpretation is for the court, and not for the parties thereto. 10 R. C. L. 1016, §§ 208, 209. It is, however, too evident from the conduct of the parties that they interpreted their agreement as a present sale and delivery so far as the merchandise is concerned.

The evidence is that some of the goods that were destroyed were bought by Anderson on his personal credit. Just what proportion is not shown. Other goods were bought by Anderson and paid for out of receipts from the business, but the amount is not given. This would depend upon the daily turnover, and the evidence is silent on that point. Whatever the amount, and it might have been considerable, these goods by no juggling of the facts were appellee's. He did not buy them, did not become personally responsible for them, did not own them, and, of course, could not claim indemnity for their loss. The contract of insurance was to cover appellee's goods, and not someone else's.

In *Phoenix Ins. Co.* v. *Quinette*, 36 Okl. 384, 128 Pac. 722, it appears the owner of a stock of merchandise, after securing a policy of insurance thereon in his favor, sold the stock to one Gray, conditioned upon the title not passing until full purchase price was paid. The contract of sale authorized Gray to carry

on the business and to replenish the stock as absolutely necessary, and provided that any stock remaining on hand after full purchase price was paid should be Gray's. The court said:

"It scarcely seems necessary to cite authorities to show that when Gray was put in possession under the contract set out above there was a change in plaintiff's interest. Prior to that time he was the unqualified and unconditional owner. From that time the vendee was in possession. He could sell and make title to articles sold out of the store in the course of the ordinary retail business, and he could and did buy, in his own name, goods to place in the stock. If Gray performed his contract, plaintiff could never regain the possession of the goods, and could have been compelled to make a further conveyance if necessary. It is not here decided whether a further conveyance would have been necessary if Gray had paid all the notes according to the contract. Gray had paid nearly one-third of the purchase price before the fire, and could have been compelled to pay the remainder, regardless of the loss."

The sale in the Quinette case differed from the sale in the case at bar in that there the insured in the contract of sale retained title to goods until paid for, whereas in this contract of sale the buyer was given title and placed in possession of the stock of merchandise. It is too plain that Anderson could have been compelled to specifically perform his contract, or, failing to do so, to pay appellee for the stock of merchandise. *Fire Assn. of Philadelphia* v. *Perry* (Tex. Civ. App.), 185 S. W. 374, is a case where the insured conditionally sold some billiard and pool tables, the buyer taking possession and agreeing to pay therefor in monthly installments, and in a suit by the insured to recover on the policy the court held:

" . . . That by the voluntary contract or agreement of the plaintiffs there was a change, other than by the death of the insured, in the interest, title, and

possession of the insured property, and in view of the fact that the policy of insurance provided that 'if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance, the entire policy shall become void,' plaintiffs cannot recover in their suit upon said policy, and it therefore follows that the court erred in not rendering judgment for defendant, Fire Association of Philadelphia."

The provision in the policy claimed to have been violated by appellee is a very common one. It is a part of the New York standard form which our statute (paragraph 3440, Civ. Code) requires every insurance company doing business in Arizona to use.

"These conditions against alienation or change of title or interest, whether appearing in the policy itself, or in the by-laws of a mutual company, have uniformly been upheld as reasonable and valid." 26 C. J. 228, § 279.

"A policy being only an agreement to indemnify insured and not an absolute agreement to pay a sum of money when property is destroyed, an insurable interest at the time of the loss is as absolutely necessary as it is in the inception of the contract." Id.

Whatever may be said about the unsold part of the goods appellee turned over to Anderson, it seems certain appellee had no insurable interest whatever in the replenishments made by Anderson.

We think the courts universally strive to uphold the right of the insured to recover, and, when the insurance company resists payment, place the burden upon it to point out wherein the terms of the policy have been violated, and this must be done with indubitable and conclusive evidence. When this requirement has been met by the company it is entitled to protection as much as any other litigant. While it must observe the terms of its contract construed most favorably to protect the insured, the latter may not, with absolute immunity ignore what he has agreed to. The appellee

was familiar with all the facts, and if he misconceived the law, and failed to take steps necessary to protect his rights as by securing modification of his insurance policy, it was his fault. When the changed condition of the property took place the insurance company, under its agreement, was relieved from further responsibility.

We cannot conceive how, under the state of the evidence, it would be possible for the appellee to recover, and it is accordingly ordered that the judgment of the lower court be reversed and the cause remanded, with directions to dismiss the complaint.

McALISTER and FLANIGAN, JJ., concur.