[Civil No. 3819.   Filed April 26, 1937.]

[67 Pac. (2d) 478.]

NEWTON JOHN BERRY, Appellant, v. ACACIA MUTUAL LIFE ASSOCIATION, a Corporation, Appellee.

Mr. H. S. McCluskey, for Appellant.

Mr. Theodore G. McKesson, for Appellee.

LOCKWOOD, J.— This is an appeal by Newton John Berry, hereinafter called plaintiff, from a judgment of the superior court of Maricopa county in favor of Acacia Mutual Life Association, a corporation, hereinafter called defendant, dismissing the action. The action is founded upon a contract of insurance issued by defendant to plaintiff, which was set up

by the latter in his amended complaint, together with allegations claiming that he was entitled to recover thereon for total and permanent disability. Defendant demurred on the ground that the complaint did not state a cause of action, and the demurrer being sustained by the court, and plaintiff electing to stand on the complaint, judgment was entered for defendant. The question, therefore, presented to us is one of law only, as the facts stated in the complaint must, for the purpose of this appeal, be considered as true. We summarize these facts as follows:

On the 1st day of June, 1930, defendant issued to plaintiff a policy of life insurance to which was attached as a part thereof a supplement providing for certain benefits in the case of disability. The parts of the policy, including this supplement, which we need to consider in passing upon the appeal read as follows:

"After a member has paid one annual premium, or an installment thereof, a grace period of one month (not less than 31 days), without interest, will be allowed for the payment of subsequent premiums or installments as they fall due. During this period the insurance shall continue in force, but if the policy shall become a claim the unpaid premiums for the then current policy year shall be deducted from the amount of insurance payable. If any premium be not paid when due as specified herein, or during the grace period, this policy shall lapse and be void except as to the provisions for surrender options printed herein."

"In consideration of an additional annual premium of $42.10, payable at the same time and under the same conditions as the regular premium under the above numbered policy, the Acacia Mutual Life Association hereby agrees:

"To waive the future premiums as the same become due during total and permanent disability;

"To pay the member an income of One Hundred & 00/100 ($100.00) dollars each month during total and

permanent disability, until the policy becomes payable by death or maturity; provided,

"The member, or, if he is incapacitated, his personal representative, furnishes the Association at its Home Office, before default in the payment of premium, satisfactory proof of the member's total and permanent disability (as defined below) and provided further that such disability originated after the policy to which this agreement is attached became effective and before the anniversary of said policy nearest the member's sixtieth (60th) birthday, subject to all of the following terms and conditions: . . .

"Benefit starts from the date proof of such disability is received at the Association's Home Office, if such proof is accepted as satisfactory, and continues during such total and permanent disability. In the event of the inability of the member to receive the income due to the nature of his disability, the income payments shall be made to his legally appointed representative.
. . .

"The provisions of the above numbered policy headed 'Payment of Premiums,' 'Grace in Payment,' 'Premium Loan,' 'Reinstatement,' 'Assignment,' and 'Admission and Correction of Age,' not inconsistent with the provisions of this supplementary contract, shall also apply hereto."

By the terms of the policy the premiums were payable quarterly, and one quarterly premium became due on the 1st day of February, 1931. It was not paid at that time, but by the provisions of the policy above set forth, since two regular quarterly installments had been paid thereon, it automatically remained in force for thirty-one days; the last day of the period of grace being March 3, 1931.

On February 28th, and before the payment of the quarterly premium then due, plaintiff was stricken by acute encephalitis, and from that day until some time in May, he was either wholly unconscious or suffered such recurring periods of consciousness, semiconsciousness, and unconsciousness that he was totally

disabled, not only physically but mentally, to such an extent that he was unable to give notice of his disability before the period of grace had expired. Plaintiff had not appointed any personal representative to perform any business on his behalf, but during the last week of May his wife did notify defendant, in writing, of his total disability as aforesaid, and furnished proof thereon. Defendant, however, on the 5th day of August denied any liability whatever on the insurance, on the ground that a failure to give notice on or before the 3d day of March caused the policy to lapse, so that nothing was due on it. There were the further allegations of total and permanent disability continuing from the 28th of February until the commencement of the suit, and a prayer for recovery in the amount set forth in the policy as total disability payments, and that all future premiums be waived thereon during the continuance of such disability.

There are four legal questions presented to us on this appeal. They may be stated as follows: (1) Does a policy of insurance such as that involved in this case entitle the policyholder to recover under the disability provisions thereof when he had failed to make the payment of the quarterly premium on or before the day it first became due, even though by the terms of the policy a grace period of thirty-one days was allowed thereon, if his disability did not occur until after the commencement of the grace period; (2) is the payment of the quarterly premium a condition precedent to the insured's right to disability benefit when he becomes totally disabled during the grace period, or is it waived by the terms of the policy; (3) when the policy requires that notice be given of a claim of disability before default in the payment of the premium, is such notice within the time prescribed a condition precedent to recovery upon the policy; (4) if the dis-

ability commences during the grace period, but by reason of mental incapacity arising from such disability, the policyholder is unable to give notice of the disability until after such grace period has elapsed without payment of the premium, does such inability extend the time during which he may give such notice for a reasonable period and continue the policy in force?

■ We consider the first question, whether a failure to pay the premium on the day it was first due destroys the right of the policyholder to any recovery under the policy, unless and until such premium is actually paid. A similar contention was made in the case of *Minnesota Mut. Life Ins. Co.* v. *Marshall*, (C. C. A.) 29 Fed. (2d) 977, 979. The court, in passing on this contention, said:

"An obligation is due during the entire period during which it may be paid, whether that period extends over one day, three days, or thirty days. The premium was not really due, in the sense that the failure to pay it would result in a forfeiture of the policy, until the grace period had expired."

The same rule has been applied in many other cases and, we think, correctly. If during the period of grace the policyholder is considered in default so that he may not recover under the terms of his policy, of what use is such period? We think that the policy is not "in default" in the payment of premium until the expiration of the period of grace, and that if a liability accrues thereon during such period, the insurer is responsible therefor, in the absence of an express provision in the policy to the contrary.

■ As to the second question, we think this is covered by the specific provision in the policy, that if it shall become a claim during the grace period the unpaid premium shall be deducted from the amount of the claim. In other words, the defendant was entitled

to deduct from any amount which became due under the policy during the grace period the amount of the premium unpaid for the current policy year.

As to the third question, in the very recent case of *Bergholm* v. *Peoria L. Ins. Co.*, 284 U. S. 489, 52 Sup. Ct. 230, 76 L. Ed. 416, this precise issue was raised, and the court held, under the terms of a policy almost identical with the one in the case at bar, that in order to take advantage of the benefits of the policy, proof must be made before the premium was in default—in this case before the 4th day of March. Contracts of insurance must, of course, be construed according to the terms set forth therein, when those terms are plain and unambiguous. We think the condition in regard to the necessity of proof as a condition precedent to liability for benefits is clear. The soundness of life insurance companies depends upon the premium being sufficient in amount and time of payment to meet the actuarial requirements. These conditions are, therefore, of the very essence and substance of the policy, and even a court of equity cannot grant relief for a failure to comply with the explicit and stipulated requirements of the policy setting up a condition precedent to the granting of any relief in the payment according to its strict terms. *Klein* v. *New York L. Ins. Co.*, 104 U. S. 88, 26 L. Ed. 662; *Bergholm* v. *Peoria L. Ins. Co.*, *supra.* We hold, therefore, that it was a condition precedent for the plaintiff to give notice and proof of his disability before his premium was in default in order that he could recover for his disability. As a matter of fact, plaintiff does not seriously contend that this is not the law, but he does urge that there is one exception to the rule, which is that when, through some reason for which the policyholder is in nowise to blame, it is impossible for him to make proof within the precise

time required by the policy, he is allowed a reasonable time thereafter in which to do so.

This last question has been before the courts repeatedly and the authorities are in hopeless conflict. On the one hand, we find such cases as *New England Mut. L. Ins. Co.* v. *Reynolds*, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075; *Dean* v. *Northwestern Mut. L. Ins. Co.*, 175 Ga. 321, 165 S. E. 235; *Berry* v. *Lamar L. Ins. Co.*, 165 Miss. 405, 142 So. 445, 145 So. 887, and many others. In the case of *Hall* v. *Acacia Mut. Life Assn.*, 164 Tenn. 93, 46 S. W. (2d) 56, the identical policy provision involved in the present action was construed by the Supreme Court of Tennessee to require the proof to be made within the time specified by the policy, and the fact that the insured was ill, and by reason thereof unable to make such proof, was held to be no excuse for noncompliance with the requirement of the policy. On the other hand, we find the states of Virginia, North Carolina, South Carolina, Arkansas, Michigan, Nebraska, Kentucky, Wisconsin, and Texas, and a number of the federal courts holding to the contrary. In the very recent case of *Johnson* v. *Mutual Life Ins. Co.*, 70 Fed. (2d) 41, 45, the Circuit Court of Appeals of the Fourth Circuit reviewed the question, and after stating that the cases from the different jurisdictions were in conflict upon this point, said:

"The situation is one where the parties may fairly be said to have contemplated a capacity to make the proof when disability should arise, for otherwise such a contract may prove a trap for the unwary by imposing conditions which incapacity may render it impossible to perform. There is, it is true, no language in the condition which qualifies it in the event that its performance should become impossible; but it is a general rule in the law of contracts, that impossibility may excuse a condition, though a condition precedent, if the existence or occurrence of the condition is no material part of the exchange for the promisor's perform-

ance, and the discharge of the promisor will operate as a forfeiture. Restatement of Contracts, § 301; and see Illustrative Case (4). See, also, Williston on Contracts, vol. 2, § 806. This principle, furthermore, has received recognition by the Supreme Court in *Insurance Companies* v. *Boykin,* 12 Wall. 433, 436, 20 L. Ed. 442, where failure to perform a provision requiring proof of loss in a fire insurance policy was held to be excused by the insanity of the insured, the court saying that ' . . . if he was so insane as to be incapable of making an intelligent statement (of the time, nature and amount of the loss), this would of itself excuse that condition of the policy.' ''

This case went to the Supreme Court of the United States on *certiorari* (293 U. S. 540, 55 Sup. Ct. 86, 79 L. Ed. 646), and while that court, in affirming the judgment of the circuit court of appeals, did so on the ground that it was to be interpreted in accordance with the decision of the court of the state where the delivery of the contract was made, and declined to express an independent preference one way or the other as to which rule was preferable, its decision at least was that the question was open to doubt. In Restatement Contracts, par. 301, it is said:

*"Excuse of condition by impossibility.*

"Impossibility that would discharge the duty to perform a promise excuses a condition if

"(a) a debt for performance rendered has already arisen and the condition relates only to the time when the debt is to be discharged, or

"(b) existence or occurrence of the condition is no material part of the exchange for the promisor's performance and the discharge of the promisor will operate as a forfeiture. . . .

*"Illustrations:*

"4. A, an insurance company, insures the life of B for the benefit of B's wife, C. The policy contains a condition that default in payment of premiums is excusable if notification is sent by the insured before making default. B becomes insane and makes default

in paying a premium. Being insane, he gives no previous notification of the non-payment. Within the period of grace allowed by the terms of the policy if he had sent a notification, he dies. A is bound to pay the policy, the condition being excused because of impossibility.''

The matter has never been before the courts of Arizona, and we consider ourselves, therefore, at liberty to adopt that rule which seems most in consonance with the general principles of equity. Applying these principles, it seems that a plausible argument can be made upon both sides of the question.

On the one hand, as is strenuously urged by defendant, it seems hard that it should be compelled to pay many thousands of dollars on a policy on which but two quarterly premiums were paid and which, so far as the evidence indicates, the plaintiff may have intended to abandon up to the time that he discovered he might be entitled to some benefits therefrom. On the other hand, it appears to be a rather harsh rule to hold that, although a disability which is compensable under an insurance policy arises while the policy is in full force and effect, a failure to report such disability within the time prescribed, when it was impossible for him to make the report, should cause him to lose all of the benefits promised him by the policy.

After a careful comparison and consideration of the equities on both sides of the question, we believe that the better rule is that set forth in the Restatement as above. Insurance policies are carefully prepared by the insurer and are, therefore, construed strictly as against it. If insurance companies desire to provide that the illness of an insured or the impossibility of his giving a required notice within the specified time shall not excuse him, they may do so. If they do not explicitly so provide in the policy, we think the better rule is that set forth in *Johnson* v. *Mutual Life Ins.*

*Co., supra.* We hold therefore, that the complaint did state a cause of action, and that the judgment of the trial court sustaining the general demurrer thereto was erroneous.

The judgment is reversed and the case remanded, with instructions to overrule the general demurrer, and for such further proceedings as may seem advisable under the principles set forth herein.

McALISTER, C. J., and ROSS, J., concur.