252 P.2d 82

MARYLAND CAS. CO. v. HOFFMAN et ux.

No. 5603.

Supreme Court of Arizona.

Dec. 15, 1952.

Rehearing Denied Jan. 13, 1953.

'ᐧ Darnell, Robertson & Holesapple, Tucson, Richard R. Fish, Tucson, of counsel, for appellant.

Gaynor K. Stover and Ira Schneier, Tucson, for appellees.

PHELPS, Justice.

This is an appeal from a judgment of the Pima County Superior Court for medical benefits which plaintiffs recovered from defendant under the provisions of an automobile insurance policy written in August, 1949, by defendant upon a certain Mercury automobile manufactured the same year. The policy provided those coverages which are customarily known as public liability, property damage and medical insurance. In this opinion the parties will be referred to according to their designation in the trial court.

Some time after the issuance of the policy in question plaintiffs purchased a small trailer having the following dimensions: 8′ 1″ long, 6′ 6″ wide and 4′ 7″ high. The trailer rested on a single axle having a rigid frame and floor. It was enclosed with aluminum sheeting forming the sides and roof. Its interior was finished in plywood and fiber wall paneling. It had a door on one side through which entrance could be made into the trailer. It had three small windows covered with curtains as well as a small window in the door. In the rear there was a built-in bed of approximately three-fourths width in size; linoleum on the floor; a clothes closet; a built-in cabinet containing a small ice box, and miniature drain board and sink to which a water faucet was attached. Drawers and closets were built into the cabinet. There was also a two-burner gas stove. It was wired for electricity and a wall bracket and lamp

shade were installed. There was on the outside of the trailer a butane gas tank connected with the two-burner stove.

The policy was procured through a Mr. Marquis, a salesman for Davidson Insurance Agency owned and operated by a Mr. W. E. Davidson. Mr. Davidson is the representative agent and attorney in fact for bonds and is the licensed agent of the defendant for insurance. He signs all policies on behalf of defendant issued out of the Tucson office. A great many of the policies are written in the office of the Davidson Insurance Agency.

After purchasing the trailer plaintiffs went to Mr. Marquis and thoroughly described the trailer to him and asked about further insurance in order to be protected on a contemplated trip into Canada and was told that the present insurance with the defendant fully covered the trailer but defendant recommended fire and theft and collision coverages with another company which plaintiffs procured. After ascertaining that the trailer was covered by the policy insuring the Mercury automobile and that their insurance on the Mercury was good in Canada plaintiffs left on a vacation trip for that area.

Between June 15 and June 27 plaintiffs slept in the trailer two or three nights, the last time being on June 27 when the plaintiff Ernest Lewis Hoffman lighted a match while sitting on the side of the bed and an explosion occurred due to a leak in the butane gas pipe which seriously burned both plaintiffs. As a result thereof they incurred heavy medical expenses over a period of weeks while being treated in a hospital at Edmonton, Canada, the amount of which was stipulated by counsel to be $2,000 and $1,026 respectively for plaintiffs Ernest Lewis Hoffman and Ara Hoffman, his wife. There is nothing in the record to indicate that the trailer was used at any time for cooking purposes or that there was any supply of groceries carried along for that purpose. The testimony of the plaintiffs was to the effect that they stayed in motels and hotels and slept on cots beside the trailer except when it rained and on the particular night of the explosion they slept inside on account of mosquitoes. The testimony shows that the trailer was filled with luggage and other equipment including three extra cans of gas, one can of water, two cots and pillows, two sleeping bags, shovel and pick, etc., which the parties used on the trip, and which had to be removed before they could get in the trailer to occupy the bed. The trailer to that extent therefore, at the time, was answering the purposes of a utility trailer for the transportation of these various articles used on the trip. Under the terms of the policy however the coverage therein provided was not limited to utility trailers as hereinafter pointed out.

It is necessary to observe at this point that after plaintiffs had left on their Canadian trip, Messrs. Marquis and Davidson of the Davidson Insurance Agency en-

dorsed a rider on plaintiffs' policy for bodily injury and property damage as a precautionary measure in the event the trailer should be held by defendant to not be covered by the policy on the Mercury automobile. This rider was attached primarily to keep alive the policy on the Mercury for plaintiffs' protection in the event of an accident and injury to them. Plaintiffs knew nothing about this rider and included in their action against defendant a count for the recovery of the premium paid by their son. The lower court directed a verdict in favor of plaintiffs for the recovery of said premium. The appeal is from the whole of the judgment and from the order denying defendant's motion to vacate and set aside such judgment and from the order denying its motion for a new trial.

Defendant presented two assignments of error based (1) upon the court's failure to give defendant's instructions 8, 10, 11, 17 and 20 which it claims defined "home" and "home trailer"; and (2) upon the ground that the evidence was insufficient for the jury to come to the conclusion. that plaintiffs' trailer was not a home trailer within the meaning of the insurance contract.

The answer to these questions depends upon the interpretation given the insurance contract specifically relating to the definition of automobiles and trailers and upon the evidence adduced at the trial relative to the character or classification of the trailer in question.

The policy defines automobiles and trailers in the following language: .

"Automobile Defined, Trailers, Two or More Automobiles, including Automatic Insurance.

"(a). Automobile. Except where stated to the contrary, the word 'automobile' means:

"(1) Described Automobile—the motor vehicle or trailer described in this policy;

"(2) Utility Trailer—a trailer not so described, if designed for use with a private passenger automobile, if not being used with another type automobile, and if not a home, office, store, display or passenger trailer."

█ This definition conceals more than it reveals. It was conceded by defendant during the course of the trial that the description in the policy was intended to cover not only the Mercury automobile described therein but any utility trailer that might be attached thereto and the case was tried throughout upon that theory. Please observe that section 2 relating to trailers defines a utility trailer as "a trailer not so described, if designed for use with a private passenger automobile, if not being used with another type automobile, and if not a home, office, store, display or passenger trailer." A utility trailer therefore under that definition which the defendant intended the policy to cover embraces not

only those trailers described as utility trailers about which testimony was given by trailer experts as being capable of use for hauling various commodities, but embraces all trailers of every description except those which are classified as home, office, store, display or passenger trailers. This must be true otherwise the words "a trailer not so described" (that is, not described as a utility trailer) would have no meaning whatsoever in the policy.

Defendant complains that the court did not give its instructions which it claims were designed to inform the jury of what constitutes a home or a home trailer. Counsel for defendant have cited no authorities in support of their definition of a home trailer, and they have offered no instructions as to what constitutes a home. Defendant's requested instructions 10 and 17 are upon a subject that is trite. Every one knows that the "lack of toilet facilities" or "the size of the trailer" has no bearing upon the question of whether it is or may be the home of any person. Whether any structure, even a house, is a home depends upon whether it is the dwelling place of a person or persons. Even though it may be discarded corrugated roofing and only constructed of palm leaves, cardboard, or large enough to shelter one person if a person dwells therein it is his home. It is the dwelling therein that characterizes it as a home, not its size nor its facilities. If the occupant, however, only stays there two or three nights a year it does not fall within the definition of a home. Instruction No. 11 about which complaint is made undertakes to tell the jury that any place can be a home if it has facilities that will enable a person to do the things normally done in a home. This is also trite and is beside the issues in this case. It only becomes a home when it is occupied as such. Instruction No. 20 requested that the court tell the jury that the camp trailer was a type of house trailer. The policy refers not to a house trailer but to a home trailer. No witness testified that the trailer in question was a home trailer.

If the defendant wanted to exclude camp trailers it should have written such exclusion into the contract of insurance, not ask this court to do so. The only instruction requested by defendant upon this subject supported by any authority at all is instruction No. 8. Defendant in support of this instruction cites a section of the compiled laws of the state of Michigan which may or may not be a correct definition from the standpoint of manufacturers of trailers or trailer dealers. The judge of a trial court or the supreme court usually possesses no superior knowledge to that of a juror as to what does or does not constitute a home and certainly he would have no superior knowledge unless he had been in the trailer business of what constitutes a home trailer.

With reference to the definition of a home, Webster's unabridged dictionary, 2d ed., defines it as follows:

"One's own dwelling place; the house in which one lives; esp., the house in which one lives with his family; the habitual abode of one's family; also, a dwelling house."

A house is defined by the same authority as

"A structure intended or used for human habitation, esp., a human habitation which is fixed in place and is intended for the private occupation of a family or families."

This indicates a distinction between a house and a home.

There was no evidence adduced at the trial from the trailer manufacturers or from any other source defining the classification of various trailers manufactured by them and what causes one trailer to fall into one classification as distinguished from another.

The automobile manufacturers classify their cars as sedans, sport sedans, one-door and two-door sedans, coupes, convertible coupes, station wagons, etc. The Mercury automobile covered by this policy is described as a "sport sedan". That is the classification given it by the manufacturers. Trailer manufacturers unquestionably classify their trailers as utility, house, home, passenger, camp trailers, horse trailers, etc. The trailer in question was classified by all witnesses engaged in the trailer business as a camp trailer which tends to confirm the postulate that trailer manufacturers do classify their output into various types. All of these witnesses testified that they subscribed to magazines distributed by trailer manufacturers and while no witness testified expressly to the fact that such classification was obtained from said publications the fact that all of them classified the trailer in question as a camp trailer compels the inference that their knowledge came from the same source.

The complaint of defendant that the court refused to give any instructions on the definition of a home is without any merit whatever because no request was made by defendant to define a home. The requests were limited to a request to inform the jury that a home does not necessarily contain toilet facilities, and No. 17, that a home need not be of any particular size. The court did instruct the jury at the request of defendant that in determining whether the trailer in question was a home trailer they may take into consideration the use for which the particular trailer was designed as well as the use to which it might happen to be put by the plaintiffs as well as the equipment which it contained.

We will now consider the second assignment of error to the effect that there is no evidence to support a verdict of the jury and the judgment entered thereon that plaintiffs' trailer was not a home trailer within the meaning of the insurance contract. It is singular that this assignment was urged because there was not one single

witness produced by either plaintiffs or defendant who testified that the trailer in question was either a home trailer or a house trailer. Every one of the five witnesses, three of whom were presented by the plaintiffs and two by the defendant and all of whom had been in the trailer business for from five to twelve years and subscribers to magazines put out by trailer manufacturers, testified that it was what is known as "a camp trailer." They all said that it was not a home trailer or a house trailer. One of the witnesses for the defendant on cross-examination, when asked if he would call it a home trailer did state, "I might". But no one of the witnesses did so designate it. The jury could not, under the evidence, have found that the trailer in question was a home trailer or a house trailer. If they had done so it would have been the duty of the trial judge to set the verdict aside for lack of evidence to support it.

It would have been a very simple matter for the insurance company to define in simple, understandable language, what classification of trailers it intended to cover in its policy and what classification it intended not to cover. If failed to do so and has used language which indicates that it intended to cover all trailers, except home, office, store, display or passenger trailers, which clearly covers a camp trailer. Even the vice president of the company, Mr. T. W. Michels located at Los Angeles, and Mr. Rea Carter, claims agent at Phoenix, construed the policy to cover plaintiffs' trailer and so stated after the loss had occurred. It is only when the claim reached the home office at Baltimore that it was suggested that the trailer was not covered. In a letter written by the company and introduced in evidence by it in denying liability it states in part:

> "Therefore, whether it was a utility trailer or a house trailer, we would still have no medical payments coverage for this trailer. * * *"

although the contract upon which this cause of action rests states, and counsel for the defendant conceded at the trial, that it did cover utility trailers. The only logical conclusion to be drawn, and certainly under the rules of construction which require the language used to be strictly construed against the insurance company who wrote the policy, there can be no other conclusion reached but that the contract of insurance does cover the trailer in question.

In conclusion we hold therefore that in the absence of some criterion to guide the trial court in defining a "home trailer" and in the absence of a specific request therefor, the court was under no duty to attempt such definition. No request was made by the defendant for the court to define what constitutes "home". Even if such request had been made we believe the jurors engaged in the trial of the case were as fully capable of knowing the requisites of a home as was the trial judge because it falls within that class of words as was said

in Jameson v. Flournoy, 76 Okl. 227, 184 P. 910,

"* * * of general and accepted meaning, which is understood by men of reasonable intelligence in all walks of life, and has a well-understood, accepted, and general meaning."

We further hold that there was no evidence adduced at the trial to the effect that the trailer in question was a home trailer or a house trailer but on the contrary the testimony was all to the effect that it was a camp trailer to be used for camp or travel purposes.

The exclusion in the policy is limited to a home trailer and does not include trailers which may have some features similar to a home trailer.

We have read Pothier v. New Amsterdam Casualty Co., 192 F.2d 425, handed down by the U. S. Court of Appeals, Fourth Circuit, October 1951. We do not know what evidence was before the court concerning the classification or character of the Pothier trailer. It may have been shown to be a home trailer. It was shown that a woman and child lived in it for a while—how long the opinion does not disclose. The trailer in that case was of such dimensions that people could live in it comfortably as a home. All of the evidence in this case is that the trailer involved is not a home or even a house trailer but that it is a camp trailer. The trailer in the Pothier case was constructed so it could be used as a comfortable home. The trailer in the instant case because of its height clearly indicates that the manufacturer did not intend it as a vehicle which would be used as a home. The Pothier case therefore fails to show a sufficient similarity to the instant case to aid us in determining the issues here involved.

The court of appeals of the state of Ohio has taken a widely different view of what constitutes a home trailer in the case of Cross v. Motorists Mutual Ins. Co., 88 Ohio App. 113, 90 N.E.2d 166, at page 167, and it is interesting to note that the policy of the defendant insurance company in that case distinguishes between a "trailer home" and a trailer used for vacation purposes.

Judgment affirmed.

UDALL, C. J., STANFORD, DE CONCINI and LA PRADE, JJ., concur.