401 P.2d 759

**EUREKA–SECURITY FIRE AND MARINE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Louis J. SIMON, an individual, doing business as Simon's Drugs, Appellee.***

**No. 1 CA–CIV 44.**

Court of Appeals of Arizona.

May 10, 1965.

Rehearing Denied June 10, 1965.

Review Denied July 6, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7740. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Jennings, Strouss, Salmon & Trask, Phoenix, by William F. Haug, Phoenix, for appellant.

Loretta S. Whitney, Phoenix, for appellee.

CAMERON, Judge.

The plaintiff below, appellee herein, Louis J. Simon, filed an action against the defendant below, appellant herein, the Eureka-Security Fire and Marine Insurance Company, for a loss sustained under a business interruption policy issued by the defendant. Judgment was awarded to the plaintiff, and the defendant appeals.

The facts necessary for a determination of this matter are as follows:

Sometime in 1952, the plaintiff was issued a policy of insurance titled "Business Interruption Form Number 3", which contained the following provisions:

"Attached to and forming part of Policy No. F410001 of the Eureka Security Fire and Marine [Insurance Company] issued to Louis J. Simon, dba Simon's Drugs * * * in amount of $20,000.

"Paragraph No. 1. Subject to all its provisions and stipulations, this policy covers only against loss directly resulting from necessary interruption of business caused by damage to or destruction of real or personal property by the perils insured against occurring during the term of this policy, except as hereinafter specifically excluded or limited, on premises situated at 2829 West Van Buren Street, inside city limits of Phoenix, Arizona, and occupied as drug store."

At or prior to obtaining this business interruption policy or rider, the plaintiff also had a policy of insurance with the defendant to cover fire loss for merchandise and drugs and fixtures and equipment. Later, the plaintiff, through his independent insurance agent, changed the policy in regards to the other coverages, and at the time of the loss mentioned herein, he carried three different policies with three different companies; one covering merchandise and drugs, another covering fixtures and equipment, and a third, the subject of this suit, the business interruption policy with the defendant. It was under these circumstances, a cancelled main insurance contract and a still valid attached policy, that plaintiff sustained the fire loss and consequent business interruption loss.

Plaintiff was the lessee under a written lease of the west portion of the building in question. The east portion of the building was occupied by a man who operated a grocery store in his portion of the building. On 26 May, 1956, a fire developed in the grocery store, substantially destroying that portion of the building and causing fire, heat, smoke and water damage to plaintiff's drug store and fountain, requiring extensive replastering, painting, retiling of the floor, and other repairs. Plaintiff's drugs and other merchandise were also damaged or destroyed. This necessitated closing the drug store for repairs.

Although plaintiff's losses were covered by three different policies of insurance, the three companies involved were represented by one adjustment company.

In adjusting the stock loss, a dispute arose between the plaintiff and the adjustment company regarding the amount of the stock loss. Because of this dispute, the loss was not settled and paid until after 29 September, 1956, some four months after the fire.

Adjustment of the loss on the fixtures was not finally adjusted and paid until 17 October, 1956, some five months after the fire. During this time the plaintiff was out of business.

The testimony indicates that part of the delay in repairing the drug store was occasioned by the landlord who insisted on rebuilding the market first, and repairing the drug store as part of the rebuilding of the market. The business interruption policy contains the following provision concerning recovery, quote 2:

"The measure of recovery in the event of loss hereunder shall be the reduction in 'gross earnings' directly resulting from such interruption of business less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required within the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as had been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy, but not exceeding the actual loss sustained by the insured resulting from such interruptions of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expenses to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss."

Defendant insurance company contends that the plaintiff could have, with the exercise of "due diligence and dispatch" resumed operations within a sixty day period, and therefore offered to settle for the amount of $2,793.83. Plaintiff disagreed and requested a settlement of $9,133.86, based on a six month period rather than the sixty day period urged by the insurance company. Negotiations between plaintiff and defendant, through the adjustment company, continued until 28 October, 1958, when the plaintiff was notified that the company would settle for the amount of $2,793.83, but no further, and the letter contained the following statement:

"This offer of compromise settlement to avoid litigation cost may be considered withdrawn as of November 18, 1958. If this compromise offer is not acceptable to your client, he may follow whatever course he chooses."

There were no further contacts between the parties or their agents and all settlement negotiations ceased at this time. Approximately eighteen months later, on 20 May, 1960, the plaintiff filed this action in the Superior Court seeking a recovery under his business interruption insurance policy.

It is admitted by both parties that the original fire policy of the Eureka-Security Fire and Marine Company, being policy number F410001 contained a provision which required the insured to bring suit within twelve months after the loss occurred. It is admitted by defendant insurance company, that this period of time can be and was extended by the negotiations carried on between plaintiff and defendant. Defendant insurance company therefore urges that the plaintiff was required to bring this action against the insurance company within twelve (12) months next following the 18th day of November, 1958, being the cut-off date specified in the letter of 28 October, 1958, and that having brought their action more than twelve months or approximately eighteen months, on 20 May, 1960, that the plaintiff is barred from any recovery under this business interruption policy.

This suit then, is concerned with two questions, one concerning the coverage of the policy itself, and two, concerning the time within which the plaintiff was required to bring his action upon the business interruption policy.

We shall take the latter question first. The business interruption policy was attached to and formed a part of the original fire insurance policy of the defendant

company. This original or basic policy contained a provision providing that the insured must pursue his claim within twelve months of the loss, or in this case, within twelve months of the cessation of negotiations between the two parties. This original or basic policy was cancelled by the plaintiff and defendant, but the business interruption policy was maintained in force and effect. The business interruption policy contains no clause concerning the time within which the insured must bring action on the policy. Appellant claims and cites much authority for the proposition that as a matter of general law, a rider which is attached to and forming a part of a separate insuring agreement adopts the provisions and stipulations of the dominant insuring agreement. We are in complete accord with this general view. Were the basic or original policy, number F410001, still in force and effect, the business interruption policy having been attached to and forming a part of said policy, there is no doubt in our minds the twelve month period for bringing suit would be applicable. Holthe v. Iskowitz, 31 Wash. 2d 533, 197 P.2d 999 (1948).

However, we are not in accord with this view when the "separate insuring agreement" has been cancelled and no longer has legal significance by itself.

Of course, the general rule is that policies of insurance are construed most favorably to protect the insured and most strictly against the insurance company. Our court has said as follows:

"We think the courts universally strive to uphold the right of the insured to recover, and, when the insurance company resists payment, place the burden upon it to point out wherein the terms of the policy have been violated, and this must be done with indubitable and conclusive evidence. When this requirement has been met by the company it is entitled to protection as much as any other litigant. While it must observe the terms of its contract construed most favorably to protect the insured, the latter may not, with absolute

immunity, ignore what he has agreed to." Arizona Fire Insurance Company v. Dillingham, 23 Ariz. 508 at 516, 205 P. 589, 592 (1922).

In the instant case, the insurance company having cancelled the main or parent policy is still attempting to read into the business interruption policy the twelve month limitation clause on time for filing suit, which was part of the original or parent policy. This we do not think they can do. We have read the business interruption policy or rider and feel that it is able to stand alone as a complete contract of insurance. The lower court also thought so, and we will not disturb their ruling unless the evidence clearly indicates that we must do so. Canyon State Canners v. Hooks, 74 Ariz. 70, 243 P.2d 1023 (1952). The insurance company having cancelled policy F410001 and having elected to allow the business interruption policy to remain in force and effect, cannot now complain that they are bound by the terms of said business interruption policy. That the business interruption policy is silent as to the period of time within which the insured may bring suit, is not the fault of the insured. He did not write the contract, he did not prepare the provisions thereof, and in the absence of a time limitation clause, the business interruption policy standing alone will be governed by the ordinary statute of limitations in the Arizona Revised Statutes (A.R.S. Section 12–548). While it may be that the insurance company did not intend that their business interruption policy be continued in force and effect, standing alone, without the twelve month time limitation clause and the other provisions of the parent policy, still this they allowed. The courts have said:

"Contracts of insurance are not to be construed to relieve insurance companies that write them from coverages broader than they intended and from coverages they would not advisedly have taken, if to do so is to leave one without protection who might reasonably be held to be within the policy's provisions. Contracts of insurance are

always construed most strongly against the insurance company. Garnsky v. Metropolitan Life Insurance Co., 232 Wis. 474, 287 N.W. 731, 124 A.L.R. 1489; 32 C.J. 1152; 29 Am.Jur., Secs. 166–167." Johnson v. Maryland Casualty Co., 4 Cir., 125 F.2d 337 at 340 (1942).

Stated another way, a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer. North British & Mercantile Ins. Co. v. San Francisco Securities Corporation, 30 Ariz. 599, 249 P. 761 (1926), Maryland Cas. Co. v. Hoffman, 75 Ariz. 103, 252 P.2d 82 (1952). It has been stated that the reason for this rule is that the insured usually has no choice in the selection or means employed in drafting insurance contracts, and that because these contracts are drawn and selected with great care and deliberation by expert legal advisors either employed by or acting exclusively in the interest of the insurance company, any ambiguity or uncertainty therein is the fault of the insurer. Berry v. Acacia Mutual Life Ass'n, 49 Ariz. 413, 67 P.2d 478 (1937).

Had defendant desired to cancel the business interruption policy when it cancelled policy number F410001, it could have done so and issued plaintiff a new policy containing a time limitation therein. This defendant elected not to do. Policy number F410001 having been cancelled cannot now be revived to control the business interruption policy which, having been severed, now stands alone and must be interpreted according to its own provisions.

■ This brings us to the second problem concerning the amount of the loss sustained by the plaintiff by reason of the interruption of business resulting from the fire. Defendant claims that the loss did not exceed the sum of $2,793.83, based upon a sixty day interruption. Plaintiff claims that the loss was the amount of $9,133.86, based upon a six months interruption of business. The court found the business interruption loss of the plaintiff was in the amount of $6,519.10.

The defendant relies heavily upon the clause that they are liable only for the interruption of business for "only such length of time as would be required *within the exercise of due diligence and dispatch* to rebuild, repair or replace such part of the property herein described." Defendant insurance company introduced evidence to show the amount of time it would take with due diligence to repair the plaintiff's property. Plaintiff contends that because of the delay in negotiating with the other two insurance carriers and the delay on the part of the landlord in repairing the premises, that he was unable to return to business until six months after the fire. Defendant cites Clause 8 of the policy which provides as follows:

"8. Special Exclusions. This company shall not be liable for any increase of loss which may be occasioned by any local or state ordinance or law regulating construction or repair of buildings or structures nor by the suspension, lapse or cancellation of any lease or license, contract or order nor from any increase of loss due to interference at the described premises by strikers or other persons with rebuilding, repairing or replacing the property or with the resumption or continuation of business; nor shall this company be liable for any other consequential loss or remote loss."

There is no evidence to indicate that the delay in repairing the drug store was occasioned by any "local or state ordinance or law regulating construction or repair of buildings" or by any "suspension, lapse or cancellation" of the lease or license or by "interference at the described premises by strikers or other persons with rebuilding, repairing or replacing the property." The court below could well find that the delay on the part of the plaintiff in returning to business was occasioned by events without the control of the plaintiff. The court could well find that the delay in negotiating the other two losses

with the adjustment company that represented the other two insurance companies, as well as defendant, was a reasonable delay to be anticipated by the defendant insurance company in writing its policy. It could also find that the delay of the landlord in repairing the building and insisting upon the rebuilding of the market first is a normal hazard or risk which an insurance company may expect in writing a policy of this kind. The trial court below did not find that the plaintiff was entitled to business interruption loss for the entire six months that he claimed. It did not, however, limit the recovery of plaintiff to the sixty day period asserted by the defendant insurance company. The testimony introduced at the trial below construed in the light most strongly to support the judgment being more than sufficient to uphold the judgment rendered we will not set such judgment aside. Atchison, Topeka & Santa Fe Railway Co. v. Parr, 96 Ariz. 13, 391 P. 2d 575 (1964), Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617 (1960).

The judgment below is hereby affirmed.

DONOFRIO, J., concurring.

. STEVENS, Chief Judge (dissenting).

I regret that I am not able to agree with my colleagues as to the time within which the suit must have been brought. It is my opinion that the suit must have been brought within twelve (12) months next following 18 November, 1958, being the cut-off date for negotiations. I agree with the majority opinion in relation to the fact that Simon's damages were not limited to the period of 60 days next following the fire.

The majority opinion construes the coverage which is the basis of this litigation as a separate and distinct policy of insurance. I cannot reach this conclusion. The document upon which the plaintiff relies is quoted in part in the majority opinion. The following language indicates to me that the document cannot stand alone, "attached to and forming a part of policy number * * *" and "subject to all its provisions and stipulations, this policy covers * * * loss * * * caused by the perils insured against during the term of this policy, except * * *." It seems clear to me that coverage under this document was dependent upon damage as a result of "the perils insured against." The majority recognizes that these perils were fire. This fact is not reflected in the document in question. By the very terms of the document, it is a rider or an appendage to a policy. Originally, the single policy contained a three phase coverage namely drugs, equipment and business loss. The coverage as to the first two items was cancelled and the policy was continued in relation to the business loss coverage only. In my opinion, it is not appropriate to say, as the majority has said, "[t]his original or basic policy was cancelled by the plaintiff and the defendant." In my opinion, the policy continued with but a single type of coverage, namely the business loss coverage. It is noted that at least two of the essential elements of an insurance policy are missing, these being the premium rate and the period of coverage. Unfortunately, the record does not disclose the date of the cancellation of the drug coverage and the equipment coverage so that we have no assistance in this problem in relation to the effective dates of the cancellation of the other two phases of coverage nor do we have assistance as to the effective date of the commencement of each of the several types of coverage.

I would reverse the case with directions to render judgment for the defendant basing this action upon the plaintiff's failure to file his suit within twelve (12) months next following the cut-off date of 18 November, 1958.