416 P.2d 1003

**ALLIED MUTUAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**David James PECK and Ida K. Peck, husband and wife, S. H. Clement and Beryl Clement, husband and wife, Kathleen Brennan and Richard Brennan, husband and wife, and Ruth Carlborg and George Carlborg, husband and wife, Gary Clement and Andrew Paul Kurtok, III, Appellees.**

**I CA–CIV 273.**

Court of Appeals of Arizona.

July 25, 1966.

---

I. Quote from Griffin v. People of the State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956).

Lewis, Roca, Scoville, Beauchamp & Linton, by Nathan Holt, James Moeller, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph E. Hunsaker, Harry J. Cavanagh, Phoenix, for appellees Brennan.

Peterson, Estrada & Matz, by Howard V. Peterson, Phoenix, for appellees Peck and Clement.

Robert B. Selman, Phoenix, for appellee Kurtok.

Langerman, Begam & Lewis, by Mark I. Harrison, Phoenix, for appellees Carlborg.

DONOFRIO, Judge.

This is an appeal from an order granting summary judgment to the defendants in a proceedings for declaratory judgment. The action was brought by appellant, Allied Mutual Insurance Company, against the appellees who were parties to a civil damage action arising out of an automobile accident occurring in the City of Scottsdale on January 26, 1964.

David James Peck, hereafter referred to as Peck, was at the time driving an MG automobile belonging to his mother and stepfather, Mr. and Mrs. S. H. Clement, hereafter referred to as Clements. Appellee Kurtok was a passenger in the car driven by Peck when it collided with a car driven by appellee Kathleen Brennan. The remaining appellees were other parties to the damage action.

The complaint for declaratory judgment is against the appellees for construction of a liability insurance policy issued to Peck in August of 1963 in Cheyenne, Wyoming, on a 1949 Dodge automobile. Appellant urges that the insurance policy issued to Peck does not cover him or the Clements for any damages or liability arising from the accident. The policy insures Peck while driving his own automobile and while driving other cars as specified. The controversy arises over whether he is covered in the instant negligence action for damages resulting from the accident while he was driving the Clements' car.

The pertinent facts are as follows:

Peck was living with his wife and two children in Cheyenne. He had lost his job and then decided to try to find employment in Mesa, Arizona, where the Clements, his mother and stepfather lived. In the event he found a job he planned to move his family to Arizona. If he did not obtain employment in Arizona he planned to go to work for his grandparents in Oregon. About a week before he came to Mesa the transmission of his 1949 Dodge went out. He left it in Cheyenne with his brother-in-law and came to Mesa by public transportation arriving on December 31, 1963. In Mesa he stayed with his mother and stepfather while looking for a job. On the day in question he asked his stepfather for the

use of the MG. Upon being advised by the stepfather that there was no liability insurance on the MG, Peck informed him that he had a policy which protected him while driving other cars. His stepfather consented and Peck then drove the MG automobile and became involved in the accident. This was the only time Peck drove any of the Clements' cars.

The sole issue before this Court is whether the trial court was correct in granting summary judgment in favor of the defendants. In determining this question, we must view the record in the light most favorable to the party opposing the motion. Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330 (1965). Also, a summary judgment can be granted only where no genuine issue as to any material fact exists. Rule 56(c), Rules of Civil Procedure, 16 A.R.S., Lawless v. Ennis, 3 Ariz.App. 451, 415 P.2d 465 (1966).

The determination of this issue resolves itself around the construction of the insurance policy, as the facts are essentially without dispute. In Eureka-Security Fire & Marine Ins. Co. v. Simon, 1 Ariz.App. 274, 401 P.2d 759 (1965) we set forth the guidelines when construing policies of insurance:

"Of course, the general rule is that policies of insurance are construed most favorably to protect the insured and most strictly against the insurance company. Our court has said as follows:

'We think the courts universally strive to uphold the right of the insured to recover, and, when the insurance company resists payment, place the burden upon it to point out wherein the terms of the policy have been violated, and this must be done with indubitable and conclusive evidence.' "

1 Ariz.App. at p. 277, 401 P.2d at p. 762.

Appellant contends that the extent of the coverage of the insurance policy rests upon issues of fact which precludes summary judgment. Here, however, the facts relevant to the construction of the insurance

contract are undisputed, and summary judgment is a proper remedy.

Appellees' chief contention based upon undisputed facts is that the policy of insurance provides coverage to Peck and Clements on the basis that Peck was driving a "temporary substitute automobile" and therefore an "owned automobile" within the meaning of the policy at the time of the accident in question. It is our opinion that this is a proper interpretation of the undisputed facts and the terms of the insurance policy.

The contract of insurance provides that Allied Mutual Insurance Company:

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

PART I—LIABILITY

Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury * * * sustained by any person;

B. injury to or destruction of property, * * *; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, * * *."

"Persons Insured. The following are insured under Part I:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household, * * *

'Owned automobile' means

(a) A private passenger, * * * automobile described in this policy for which a specific premium charge

indicates that coverage is afforded, * * *

(d) A temporary substitute automobile; 'temporary substitute automobile' means an automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

And the policy specifically excludes a "temporary substitute automobile" from the definition on "non-owned automobile":

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, *other than a temporary substitute automobile*." Emphasis supplied.)

The policy of insurance specifically names those persons who will be insured with respect to the "owned automobile". Under subsection one of the policy affords coverage to the named insured, Peck. Under subsection three the policy affords coverage to persons vicariously liable or claimed to be liable by reason of the acts or omissions of the named insured. Thus, subsection three covers the Clements.

 We must now determine the meaning of the word "owned automobile". This is a word of art in insurance contracts and we look to the contract itself for its meaning. The contract expressly states that a "temporary substitute automobile" is an "owned automobiles." The "temporary substitute automobile" means any automobile not owned by the named insured, Peck, while temporarily used with the permission of the owner, Clements, when the named insured's automobile is withdrawn from normal use because of its breakdown. It is undisputed that Peck's automobile which was covered under the policy was withdrawn from normal use because of the failure of its transmission and .

that the Clements gave their permission to Peck to use the automobile in question.

Appellant contends that the automobile in question cannot be considered as a "temporary substitute automobile" since Peck had abandoned his automobile in Wyoming. Viewing the facts as required by the procedural posture of this appeal i. e. most favorably towards appellant's contention, we do not find any evidence to support abandonment. Approximately one month had elapsed between the date Peck's automobile had broken down and the date of the accident. Peck testified on cross-examination at the hearing which preceded the ruling on the motion for summary judgment as follows:

"Q. In fact, when you came down here to Mesa you had no intention of returning to Cheyenne, did you?

A. No, sir, I did not. *Just to get my car was all."* (Emphasis supplied)

Peck's testimony at the hearing together with his testimony in the deposition, contradicts the appellant's contention of abandonment.

Affirmed.

STEVENS, C. J., and CAMERON, J., concur.